## ELDRED v. KESSLER.

(Circuit Court of Appeals, Seventh Circuit. February 7, 1900.)

No. 709.

1. PATENTS—INFRINGEMENT—CIGAR LIGHTERS.

The Chambers patent, No. 492,913, for an electric lamp lighter, shows a device by which a fluid cigar lighter is automatically ignited and extinguished. The invention is not of a primary character, which entitles the claims of the patent to a broad construction, but is limited by the prior art to mere improvements on prior devices which accomplished the same general result, and the claims must be limited to the specific improvements shown. Claims 1, 7, 10, and 12 so construed, and *held* not infringed.

2. SAME.

     The Eberhard & Schimkatt patent, No. 522,934, for an electric cigar lighter, construed, and *held* not infringed as to claims 1 and 6.

**Appeal from the Circuit Court of the United States for the District of Indiana.**

    The appellant was the complainant below in a suit for alleged infringement of letters patent No. 492,913, issued to J. C. Chambers, March 7, 1893, for an "electric lamp lighter" (used as a cigar lighter), and No. 522,934, issued to J. J. Eberhard and O. G. Schimkatt, July 10, 1894, for an "electric cigar lighter,"—both patents being owned by the complainant. Infringement of a third patent (No. 522,727, granted to Chambers) is further charged in the bill, but no claim is made thereunder. On final hearing the bill was dismissed for want of equity and this appeal is from such decree.

    The Chambers patent, No. 492,913, was granted upon an application filed November 21, 1892, and the drawings and specifications are as follows:

    "My invention relates to certain new and useful improvements in an electric lamp lighter, and it consists of the devices and appliances, their construction, combination, and arrangement, as hereinafter specified and claimed, and illustrated in the accompanying drawings, in which Fig. 1 is a side elevation,

showing parts in section; Fig. 2 is a side elevation, illustrating a modification of the invention; Fig. 3 is a detail view of the insulated cap; Fig. 4 is a partial side elevation, illustrating a modification of my invention; Fig. 5 is another detail, showing the insulating cap in section adjacent to the upper end of the lamp. The principle of my invention depends upon providing poles of an electric circuit adjacent to the end of the lamp to be lighted, the circuit being normally open, and in closing and breaking said circuit to produce an electric spark to ignite the lamp. My invention contemplates preferably making the electric circuit through a properly constructed lamp and an adjacent arm, and in breaking said circuit by a movement of the lamp or arm, to produce an igniting spark adjacent to the lamp when it is desired to light the lamp. To effect an economical use of electricity, and prevent an unnecessary running down of the battery, it will obviously be requisite to have the electric poles of the battery normally out of connection, so that the circuit shall be open. The object of my invention is to provide a device of this class of superior utility, which shall be simple, economical, and efficient, and which may be readily operated. I carry out my invention as follows: A represents any suitable support. B, B, is an electric battery. B' is an induction coil, connected therewith. C and C' are the wires connected with said coil. D denotes a standard upon which rests a lamp, E, provided with a wick tube, as at e. The chamber of the lamp is constructed preferably of metal. One of the wires, as the wire C, is electrically connected with said standard; the current, when the circuit is completed, passing through the standard and lamp and adjacent to the exposed portion of the wick. F denotes an arm which may be supported on said standard, D; said arm extended into proximity to the lamp wick. The other wire, as the wire C', is extended through said standard, and insulated therefrom, and electrically connected with said arm. G denotes insulating material, and H is a connecting metallic bar, electrically uniting said wire, C', and the arm, F; said bar being insulated from the standard, D, and from the lamp. The arm, F, may be fulcrumed upon the bar, H, as at h, and provided at its lower end with an operating handle. At the end adjacent to the lamp wick, the arm, F, is provided, preferably, with a piece of wire, F'; the wire being coiled, as shown at f, between its outer extremity and the arm. The extremity of the arm projects normally over the wick, at which point it is also provided with an insulating cap, F², and with an extension, F³ (Fig. 5); the cap and its extension acting as an extinguisher. The lamp may have a removable engagement with the standard, D'; the standard being constructed with a flanged seat, d, for the lamp, the flange being provided with a retaining recess, as at d', and the lamp being provided with a pin, e', engaging said recess. The operation of the device as now described is evident. By moving the arm, F, upon its fulcrum, the wire tip, F', is brought first into contact with the metal of the lamp adjacent to the wick, thereby completing the electrical circuit. As the arm, F, continues to be moved further, said wire point is disconnected from the lamp, producing an electric spark adjacent to the lamp wick, and igniting the lamp. J is a spring to automatically return the arm, F, to normal position out of electrical connection with the lamp, and bringing the insulating cap and the extinguisher into position to extinguish the lamp. By removing the spring from its bearing upon the arm, it may be held out of normal position, allowing the lamp to burn freely for any length of time desired. The lamp may be thus removed from the standard and carried about, if desired. I do not limit myself to any particular material to supply combustion in the lamp, but find gasoline very suitable, and I prefer to saturate a supply of cotton, as indicated at e², within the lamp, or analogous material, with the gasoline. Alcohol or other suitable material may, however, be used, instead of gasoline. As shown in Fig. 4, the lamp is hinged to the standard, as at E². As so constructed, the arm, F, may remain stationary, and the lamp be moved, so as to form electrical connection with the wire tip upon the arm, F, and automatically light the wick. By this construction, shown in said last-named figure, either the arm or the lamp may be moved, as may be desired, to produce ignition. In Fig. 2, the lamp, instead of being directly supported upon the standard, is suspended upon shaft, K, of a gear, K', meshing with a gear, L, rigidly connected with the arm, F. By this latter construction, evidently, when the upper end of the

arm is moved in one direction, the upper end of the lamp is moved in the opposite direction. In this case both the arm and lamp are movable. It will be seen, thus, that the lamp is self-lighting and self-extinguishing, by moving either the arm, F, or the lamp. The lamp, being movable, may be taken out from the support and carried about. The device is adapted for a wide variety of uses. It may conveniently be used as a cigar lighter, for lighting gas jets, and for other analogous purposes. As shown in Fig. 1, the standard, D, is vertically adjustable in the base, A, so as to raise and lower the lamp to a desired height. A set screw, M, may be provided to hold the standard in position. A screw, j, insulated from the standard, D, serves to hold the spring in place, while an additional similarly insulated screw, N, serves as a stop for the arm, D, when automatically returned to normal position. The screws may be made of insulating material, or the standard, D, may be provided with insulating material."

Infringement is alleged of claims 1, 7, 10, and 12, reading as follows:

"(1) In an electric lamp lighter, the combination, with a lamp, the burner of which is formed into or provided with an electrode, an extinguisher formed into or provided with the opposite electrode, the means for establishing and breaking the electric connection between said electrodes substantially as set forth."

"(7) In an electric lamp lighter, a metallic supporting standard, a metal lamp, a metal arm insulated from the standard and lamp and led into proximity to the lamp, an electric circuit through the arm, lamp, and standard, having its poles adjacent thereto; said lamp and arm the one made movable in relation to the other, to make and break said circuit at said poles, the circuit being normally open, substantially as described."

"(10) In an electric lamp lighter, a lamp, a support therefor, an arm, led into proximity to the lamp, provided with an extinguisher, an electric circuit having its electrodes at the adjacent portions of the arm and lamp; said arm and lamp the one movable in relation to the other to close said circuit to ignite the lamp, and self-retracting to extinguish the lamp, said circuit being normally open, substantially as described."

"(12) In an electric lamp lighter, the combination of a lamp, a support therefor, an arm overhanging the lamp tube, an electric circuit in electrical connection with the lamp and with said arm, a metallic bar, H, connecting said arm with the circuit and insulated from the standard and lamp; said lamp and arm the one made movable with relation to the other, to close the circuit and ignite the lamp, substantially as described."

The Eberhard & Schimkatt patent, No. 522,934, was granted upon an application filed September 25, 1893, and the drawings and specifications are as follows:

"Our invention relates to improvements in electric cigar lighters, and it consists in certain features of construction and in combinations of parts hereinafter described and pointed out in the claims. A preferable construction embodying our invention is illustrated in the accompanying drawings in which Fig. 1 is a side elevation of the lighter, portions being broken away and in section to more clearly show the construction; Fig. 2 is a front side elevation of the lighter, or left-hand side elevation relative to Fig. 1, portions being broken away and in section to more clearly show the construction; Fig. 3 is an enlarged elevation in section, hereinafter more fully described. Fig. 4 is a top plan in section on line 4, 4, Figs 1 and 2. Referring to the drawings, A represents a lamp preferably composed of a metallic or electric current conducting tube open at its upper end for receiving a wick or suitable absorbent and inflammable material, a. The remaining portion of the tube is bent to form a loop or handle, A', that serves as a reservoir for receiving the oil or liquid fuel; said reservoir having a nozzle, A², for filling purposes, a cap or plug, A³, being provided for said nozzle. The lamp is pivotally hung, as at C, between a pair of arms or brackets, B, that are suitably connected at the top by a cross member, B', suspended from the ceiling or support overhead by means of the insulated wires, D and D', that lead from the two terminals of an electric battery or other electric source (not shown). Members, B, B, and

Fig. 1.
Fig. 2.
Fig. 4.
Fig. 3.

B', are preferably composed of a single piece of metal or conducting material, forming a U-shaped frame. Upon the insulating material that incloses one or both of the electric wires is preferably formed a knot, E, that engages the under side of the central portion of, and thereby supports, cross member, B'; the latter being preferably bent upwardly at that point to more conveniently accommodate the location of said knot and other parts hereinafter described. The one electric wire, namely, wire D, electrically connects with member B', as at d; member B', through supporting arms of brackets, B, and the pivotal bearings of the lamp, having electrically connected therewith the wick-holding tube of the lamp. The other electric wire, D', electrically connects with an electric current conducting plate, G, suitably supported a suitable distance below member B', preferably from screws, H, the heads, h, whereof engage the upper side of member B', and the shanks of the screws extend through

106 F.—33

said conducting plate and screw into an extinguishing plate, I, located below the conducting plate and hereafter more fully described. Said conducting plate is electrically insulated from supporting arms or brackets, B, and consequently from the lamp; insulating bushings, K, being mounted upon the supporting screws where the latter extend through the conducting plate, insulating material, L, being interposed between the conducting and extinguishing plates, insulating material, M, being interposed between the flanged edges of the conducting plate and the supporting arms or brackets, and insulating material, N, lining the under side of cross member, B'. By the construction just described, the conducting plate is effectually insulated from the lamp. A spring, O, suitably supported, is electrically connected with the conducting plate a suitable distance in advance of the aforesaid extinguishing plate (see Figs. 1 and 2); said spring being preferably of the coiled variety, with the one end of the coiled portion electrically connected with the conducting plate, as at O', and the other end projecting downwardly into the path of the upper extremity of the wick-holding tube of the oscillating or swinging lamp, as at O²; the arrangement of parts being such that, normally, the lamp hangs in position with the upper end of the wick-holding tube rearward of the aforesaid contact spring, so that, upon oscillating or actuating the lamp forwardly upon its pivotal bearings, the upper end of the wick-holding tube thereof makes and breaks contact with the contact spring, first closing and thereupon interrupting the electric circuit, resulting in the production of an electric spark that establishes the ignition of the wick or absorbent and inflammable material of the lamp. The extinguishing plate I hereinbefore referred to, as already indicated, is supported by means of screws, H. It is located at the rear of the contact spring, O, and has a downwardly and rearwardly extending incline or arc-shaped member, I (see Fig. 1), located just outside of the path of the upper extremity of the wick-holding tube of the lamp, so that, when the lamp is released after use, and thereupon swings rearwardly by gravity, the light thereof will swing in under and close to the incline or arc-shaped member of the extinguishing plate, and be extinguished thereby. Another feature of considerable importance consists in the adjustability of the lamp, relative to the contact spring, so that proper contact shall be made between said spring and lamp in the operation of the device. A preferable construction for the purpose is exhibited very clearly in Figs 1, 2, and 4, wherein the pivotal of the lamp is a part of two clamp sections, R, R, that embrace opposite sides of the wicket holder of the lamp, respectively, and are caused to clamp said holder by tightening screws or bolts, S, S, that extend through the clamp sections on diametrically opposite sides of the holder, respectively. By loosening said securing screws or bolts, the clamp releases or loosens its grip on the lamp, whereupon the latter can be adjusted vertically to bring the upper extremity of the wick-holding tube in the position required relative to contact spring, O."

Infringement is alleged of claims 1 and 6, reading as follows:

"(1) In an electric cigar lighter, a suitably supported framework carrying a contact device, and comprising the cross bar, the depending hangers, the lamp pivoted to the lower end thereof; also carrying a contact device adapted, in the swinging of the lamp, to engage with the contact device on the framework,—substantially as described."

"(6) In a cigar lighter, the combination, with a frame comprising a cross bar and two depending members, of a lamp pivotally secured at the lower ends of said members,—the cross bar of the frame being provided with an inclined extinguishing plate, and the upper end of the lamp being cut at an angle, whereby the light of the lamp is extinguished when the end of the lamp passes under the extinguishing plate,—and means of automatically forming an electric spark when the end of the lamp passes out from under the plate, substantially as set forth."

The device which is alleged to be an infringement is made in accordance with letters patent No. 562,395, issued to A. C. Gruhlke and W. F. Kessler, June 23, 1896, and No. 598,489, issued to W. F. Kessler, February 1, 1898; and it is accurately shown in the drawings of the last-mentioned patent as follows:

Fig 1. Fig. 2. Fig. 3. Fig. 4. Fig. 5.

The following patents were introduced as showing the prior art, classified by the experts on the part of the appellant as (1) gas-burning lighters; (2) incandescent wire lighters, purely electric; (3) fluid lighters, as follows: Of the first class, Rouillion's, No. 170,303 (1875), Tag & Smith's, No. 399,168 (1889), Kronenberg's, No. 399,416 (1889), and Huot's, No. 493,030 (March 7, 1893); of the second class, Belfield's, No. 383,611 (1888), and Engert's, No. 463,754 (1891); of the third class, Flora & Hoy's, No. 422,196 (1890), Graham's, No. 432,197 (1890), Robert's, No. 435,668 (1890), Hayden's, No. 436,354 (1890), Gutberlet & Isard's, No. 488,889 (1892), Hen & Weinmann's, No. 382,231 (1888), and Eastman's, No. 481,692 (August 30, 1892); also the following patents, which are subsequent to Chambers', but prior to Eberhard & Schimkatt's: Russell's, No. 499,596 (1893), and Struble's, No. 506,347 (1893). On the part of the appellee these patents are classified in another aspect, thus: (1) Torch lighters, No. 435,668, No. 422,196, No. 436,354, and No. 432,197; (2) swinging lighters, No. 170,303, No. 399,168, and No. 399,416; (3) fixed base lighters, No. 493,030, No. 481,692, and No. 382,231; (4) incandescent lighters, No. 383,611, No. 463,754,—and in such subdivision of the prior art the Chambers patent is placed in the third class, and that of Eberhard & Schimkatt in the second class.

Louis K. Gillson and C. C. Linthicum, for appellant.

R. S. Taylor, for appellee.

Before WOODS and GROSSCUP, Circuit Judges, and SEAMAN, District Judge.

SEAMAN, District Judge, after making the foregoing statement, delivered the opinion of the court.

The charge of infringement in this case rests mainly, if not wholly, on the Chambers patent, No. 492,913, which was granted March 7, 1893, upon an application filed November 21, 1892; and the art in question relates only to cigar lighters for the use of smokers at stands or places where cigars are sold. Aside from the use of matches, this want has long been supplied for all practical purposes by the use of a minute gas jet or other constant flame, with various forms of taper or torch for lighting; and when gas was used a simple mechanism increased the flame as required, or with the aid of electricity the lighting was instantaneous and no constant flame was necessary. Improvement of means for this purpose, except by way of attractive designs, would not seem to afford a wide field for useful invention. Nevertheless, the smoker was not left dependent upon primitive means for lighting his cigar at the counter, and 13 patents for improvements in cigar lighters are in evidence here by way of showing the prior art, —all issued during the several years preceding the Chambers' application, all involving the use of electricity, and each purporting to be an improvement in such lighters. The experts on one side and the other classify these prior devices in conformity with their different theories of the Chambers invention,—on the part of the appellant as (1) gas burners, (2) incandescent wire burners, both igniting and extinguishing automatically, and (3) fluid burners, subdivided as nonautomatic, for igniting or extinguishing, and automatic, for ignition only; on the part of the appellee as (1) torch lighters, (2) swinging lighters, (3) fixed base lighters, and (4) incandescent lighters.

The Chambers device in question is a fluid burner, and the drawings show a base containing the battery and induction coil; a post or standard mounted thereon, with a lamp at the top; a spring lever arm "in pivotal relation therewith, carrying an extinguisher in hood form"; a crank for moving the arm manually, so that the extinguisher is moved to and from the projecting wick of the lamp, one electrode is formed at the wick, and the other in the extinguisher hood. In normal position, the hood covers and partially incloses the wick or burner. When a light is wanted, the hood is moved from the wick, contact of the electrodes is made and broken, and a spark produced which lights the burner. Release of the crank returns the hood to position over the wick and wipes out or smothers the flame. Except in certain details of construction not involved in this controversy, no novelty appears in this device, in view of the prior patents and devices, unless it can be found in the dual feature of extinguishing and igniting the flame automatically. Upon this feature alone the claim is made on behalf of the appellant that Chambers made a discovery of such character in the art as, applied to fluid-burning lighters, that his invention was primary, and that the claims of his patent were entitled to broad construction and to the corresponding range of equiva-

lents as a "pioneer invention." For interpretation in that view it is asserted in the brief of counsel for the appellant that this invention was, broadly, "an electrically ignited fluid-burning lighter, having its members pivotally connected, so that it ignited and was extinguished automatically when grasped for use and released." If this contention is sustained, the claims of the patent are correspondingly broad and general in their terms, and it is plain that the appellee's device in its generic features is within their scope, though it differs in appearance and structure and presents the more attractive and convenient cigar lighter. The court below construed the Chambers patent otherwise and dismissed the bill, finding no infringement for reasons thus stated:

"In view of the prior art, the claims alleged to be infringed must receive a narrow construction. Any other construction would render them void, as claims for what was old in art. Giving the patent a narrow construction, the defendant's device does not infringe."

The issue, therefore, depends for solution upon the inquiry whether the Chambers invention was primary in character and entitled to generic claims, or was one of mere details of construction for improving a prior device "which was capable of accomplishing the same general result" (Machine Co. v. Lancaster, 129 U. S. 263, 273, 9 Sup. Ct. 299, 32 L. Ed. 715), and so limited to specific claims and narrow construction. Instances are frequent of complication and difficulty in such inquiry; but it is simplified in the present case, both by the clear showing of the prior art, and by its analysis in the brief of counsel for the appellant, and by this concession of its effect in narrowing the claim of invention:

"Automatic ignition and extinguishing had theretofore been accomplished in gas-burning lighters, and in incandescent wire lighters the current had been automatically turned on and off in the act of bringing the instrument into use and releasing it. This had not been accomplished in fluid-burning lighters. In one out of five earlier attempts of record, automatic ignition had been secured, but automatic extinguishing had not."

In other words, the contention is (1) that the fluid burner must be segregated from the other types of cigar lighters, because it presented a different problem for extinguishing the flame, requiring means to wipe out or smother it, instead of cutting off the supply for the burner, and (2) that in the prior device, there referred to as an instance of a fluid-burning lighter which was ignited automatically by electricity (Hen & Weinmann's patent, No. 382,231, May 1, 1888), the flame was extinguished by the manual operation of replacing the wick in its socket; thus leaving the field open for Chambers to make a "pioneer invention" when he accomplished with the same element both automatic extinguishing and igniting. To furnish the burner for a cigar lighter where there is no gas supply, and where electricity alone is not desired, oil or fluid is the natural means, and burners so provided have long been used as a common species of the generic cigar lighter. Whether improvement of this species in the same direction in which the gas burner and electric burner have been improved for like purpose may possibly constitute primary invention, in the sense of the patent law, is an abstract question which does not call for consideration, in view of the undisputed facts in this record. Treating the

106 FEDERAL REPORTER.

fluid-burning lighter as a distinct class, we are of opinion that Cham-bers' invention was neither primary in its character, when compared with its predecessors of like class, nor an advance of great utility or value in the art, to authorize generic claims in the patent or broad construction. The prior cigar lighter of this class "accomplished the same general result" with analogous means, including the use of electricity, and in one instance, at least, ignition was automatic; the means for extinguishing the flame being convenient and effective, but not automatic. The problem for improvement of the lighter was not, apparently, in the direction of labor saving or safety, but to make it more attractive or serviceable; and, when it seemed desirable to provide for extinguishing the flame, automatically generic means for the purpose were clearly pointed out, both in the same art and in analogous devices, in the old cap or cover for the wick, operated by the lever and spring or gravity. Electricity had long served for light-ing in connection with similar devices to open and close the gas valve for like purpose, and both of these old devices were thus utilized by Chambers; his extinguisher being moved to and from the lamp wick.

Moreover, he was not even the first to adopt this conception for the fluid burner. The Eastman patent, No. 481,692, was granted August 30, 1892, for an "electric cigar-lighting lamp," and shows a fluid-burning device which differs in form from that of Chambers, but is equally automatic in lighting and extinguishing by electricity,— closely resembling the Hen & Weinmann device, except for this dual feature. The application for the Chambers patent was filed Novem-ber 21, 1892, and testimony was offered on the part of the appellant to carry the date of invention back of the Eastman grant; but it consists of the uncorroborated testimony of a single witness and is too in-definite and unsatisfactory to defeat the presumption raised by the earlier patent. We are of opinion, therefore, that the invention of Chambers was in no sense generic, and confers no monopoly to bar the old pathway against other improvers seeking the same end with other devices which are not mere colorable evasions; that the claims in question were rightly construed in the court below, and that, broadly interpreted, such claims would be anticipated by the prior devices; and, thus limited to the device substantially as shown and specified, of which the special feature is the pivoted arm carrying at its upper end the electrode, the appellee does not infringe. His lighter is of a different type, of the suspended order. The lamp is contained in a handle, which is a weighted body, suspended by a flexible cord carrying the conducting wires. Movement of the handle in the act of lighting the cigar operates the device through one electrode for ignit-ing the wick, and the light is extinguished by the hood when the handle is released and drops into place. It differs materially from the Chambers, is lighter in form, structure, and method of operation, and is adopted from the prior art, as particularly shown in forms of the gas lighter of which the Tag & Smith patent, No. 399,168, is a proto-type.

The remaining patent of which infringement is alleged is No. 522,934, granted to Eberhard & Schimkatt. This is of the suspended order, and an adaptation in general form of the patents of Rouillion (No. 170,303), Tag & Smith (No. 399,168), and Kronenberg (No. 399,-

416), and in details of Russell and Russell (No. 499,596) and Struble (No. 506,347). It is well conceded in the brief of counsel for the appellant that this patent "is of limited scope," and whatever of novelty there may be in its structural features, in view of the patents referred to, including the "inclined extinguisher plate" taken from the Chambers device, the appellee does not infringe under the construction thus applicable to the claims. In so far as identity of structure appears, both improvers take such feature in common from the prior art in like relation.

The decree of dismissal of the bill for want of equity is accordingly affirmed.