## GENERAL RY. SIGNAL CO. v. UNION SIMPLEX TRAIN CONTROL CO., Inc.

No. 1243.

District Court, D. Delaware.
May 4, 1938.

Clifton V. Edwards (of Edwards, Bower & Pool), all of New York City, and Hugh M. Morris and Edwin D. Steel, Jr., both of Wilmington, Del., for plaintiff.

Theodore W. Miller, of Chicago, Ill., and Harold B. Howard, of Wilmington, Del., for defendant.

NIELDS, District Judge.

A suit for injunctive relief was brought by General Railway Signal Company, a New York corporation, herein called "General," against Union Simplex Train Control Co., Inc., a Delaware corporation, herein called "Union." The bill of complaint prays for a writ of injunction restraining Union from further prosecuting a certain claim and petition against the trustee of the Chicago and North Western Railway Company or against the Railway; from prosecuting any claim or suit for infringement of patent No. 1,470,107 against any of the customers of General; and from bringing or threatening to bring any suits under said patent against any system made or installed by General, which could have been litigated in a certain earlier New York infringement suit.

### Statement of Facts.

For many years General was engaged in the manufacture of railway signal equipment in the city of Rochester, State of New York. It developed a system of automatic train control. The system operates in conjunction with the usual automatic block signal system along a railway right of way wherein the track is divided into operating blocks of varying lengths, and wayside signals are automatically displayed in accordance with the traffic in the blocks. The system responds to the "danger" sig-

nal condition caused by the presence of a train in a block ahead and sets up on an approaching locomotive a chain of operations which will bring about the braking or stopping of the train before the occupied block is reached, in much the same manner as an engineer would do if normally alert and controlling his train according to the wayside signal indications. The system is arranged to transmit an effect between a trackway device located adjacent the wayside signal and simultaneously controlled by traffic conditions and an electromagnetic device on the locomotive to initiate a chain of operations including moving an actuator to operate the engineer's brake valve to stop the train.

Also for many years Union was engaged in perfecting a system of automatic train control in the city of Rochester, New York, although its system never went into commercial use. In 1924 the Interstate Commerce Commission required nearly all the first-class railroads to install an automatic train control system on at least one division. In 1925 General manufactured and sold its system to the Chicago and North Western Railway Company and the system was installed on one of the divisions of that railroad. Afterwards this system was carried to other divisions of the road. A detailed description of these installations was published in Railway Signal for September and October, 1925 and for December, 1928; in General Railway Signal Company Note Book No. 5 published in August, 1926; and Pamphlet No. 528 published in 1926. Also in 1925 General manufactured and sold its system of automatic train control to the New York Central Railroad Company and the system was installed on various divisions of that railroad.

April 15, 1929, Union brought suit against General in the United States District Court for the Western District of New York, alleging ownership of U. S. patent No. 1,470,107 granted October 9, 1923, issued to Alfred L. Ruthven and subsequently acquired by Union. Union charged that General had infringed the patent by manufacturing and selling automatic train control systems embodying and containing the alleged invention of the patent. In this suit the New York Central Railroad Company was joined as a party defendant. The bill alleged the railroad company was an infringer because it installed and used the train control ap-

paratus manufactured by General. The bill prayed for an injunction and an accounting.

November 18, 1929, Union amended its bill of complaint. In the original bill and in the amended bill Union charged infringement generally without specifying any particular claims charged to be infringed, or designating any specific apparatus alleged to infringe. The amended bill of complaint alleged that all the claims of patent No. 1,470,107 have been infringed. It charged, "Since the grant of said letters patent No. 1,470,107, the defendant, General Railway Signal Company, well knowing the facts hereinbefore set forth, has, at its principal place of business at Rochester, New York, unlawfully made or caused to be made, used and sold, and threatens to continue to make or cause to be made, used and sold train control apparatus embodying and containing the invention described and claimed in said patent * * *." Union prayed for an injunction restraining General from making, vending or installing "any train control apparatus working in accordance with or embodying the inventions described and claimed in said letters patent * * * 1,470,107 * * * and from infringing upon or violating said letters patent in any way whatsoever"; and praying further that General and the New York Central Railroad Company "be ordered to account for and pay over to plaintiff [Union] their profits unlawfully derived from the infringements of plaintiff's [Union's] rights as aforesaid, and also the damages sustained by plaintiff [Union] by reason of such infringements, * * *". General filed its answer to the amended bill denying generally the infringement of any of the claims of patent No. 1,470,107 and alleging that said patent in its entirety was invalid and void by reason of the state of the prior art with respect to each of the inventions claimed in the patent. Thus all the claims of the patent were put in issue by the pleadings.

In May, 1931, the parties filed a stipulation in the New York suit relative to the particular claims Union intended to rely on. They stipulated: "As to Ruthven patent number 1,470,107 filed June 15, 1917, issued October 9, 1923, plaintiff intends to rely at the trial upon claims 6, 10, 11, 12, 14 and 16 and claims 45, 46 and 49."

January 6, 1933, Union through its President A. L. Ruthven wrote a letter to

Chicago and North Western Railway Company as follows:

"You are hereby notified: That the Union Simplex Train Control Co., Inc., a corporation organized under the laws of the State of Delaware, and having its principal place of business in the city of Rochester, New York, is the owner of United States Patent No. 1,470,107 covering Brake Valve Actuator and Speed Control.

"You will further take notice that in the use of said Brake Valve Actuator and Speed Control now installed on your lines, you are infringing claims 11, 14, 46, 60, 61 and others, and you are therefore, asked to discontinue immediately further infringement thereof."

The New York infringement suit was tried in July of 1933. At the trial Union confined its proofs to claim 11. July 9, 1935, the District Judge filed an opinion holding that the apparatus manufactured and sold by General and used by the New York Central Railroad did not infringe claim 11 of the patent. He further held that if claim 11 was construed to read upon the apparatus in suit the claim was anticipated by the prior art. August 14, 1935, the bill was dismissed in the district court.[1]

Meanwhile the Chicago and North Western Railway Company filed its petition for reorganization under section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205, in the United States District Court for the Northern District of Illinois, Eastern Division. December 31, 1935 Union filed with Charles P. Megan, trustee of the Chicago and North Western Railway Company, a proof of claim against Chicago and North Western Railway Company, Debtor, in the amount of $245,400.00. The proof of claim was based upon the installation by Chicago and North Western Railway Company of "a combination Brake Valve Actuator and Speed Control Equipment." The proof of claim alleged that the apparatus in question infringed claims Nos. 9, 15, 16 and 61 of Patent No. 1,470,107 and stated that the installations had been made by the Chicago and North Western Railway Company in 1925 and 1926.

March 25, 1936, Union filed a petition in said reorganization proceeding praying for permission to file a suit against said trustee for the purpose of enjoining the trustee "from directly or indirectly using or causing to be used or installed, or vending any train control apparatus working in accordance with, or embodying the invention described and claimed in said letters patent No. 1,470,107 and from infringing upon or violating said letters patent in any way whatsoever, together with legal damages sustained by the petitioner by reason of such infringement". The proof of claim was referred by the court to a special master to hear and determine but no further proceedings have been had upon the claim or upon the petition.

At the time of the installation of the Chicago and North Western system General agreed to defend the Railway Company in any suit brought against it for alleged infringement based upon the use of apparatus furnished by General and to pay any damages which might finally be decreed in a suit. Thus General was obligated to defend the Chicago and North Western Railway against the claim and petition filed against it by Union.

An appeal was taken from the decree of the U. S. District Court for the Western District of New York. 11 F.Supp. 854. In June, 1937, the appeal was argued in the United States Circuit Court of Appeals for the Second Circuit. 91 F.2d 950. August 16, 1937 the Circuit Court of Appeals filed its opinion holding claim 11 of Patent No. 1,470,107 invalid and void for lack of invention and affirmed the decree of the District Court.

## Law.

It is suggested that the system installed on the Chicago and North Western Railway Company was different from that installed on the New York Central Railroad. There was no substantial difference between the systems. The difference was in one particular only. In the Chicago and North Western Railway system there was the obvious addition of an ordinary speed governor. They are so nearly the same that the court from the present record finds them, in legal effect, to be the same.

Thus we have two customers of the same manufacturer sued by a patentee. In the New York suit the manufacturer was joined as party defendant with the railroad company. In the Chicago reorganization proceeding the manufacturer as-

---

[1] No opinion for publication.

sumed the defense, as it was bound to do, under the usual agreement between a patentee and its customer. The New York infringement suit was carried to final decree. The Circuit Court of Appeals of the Second Circuit found claim 11 of the Ruthven patent No. 1,470,107, asserted against both systems, invalid and void. Is the New York case res judicata and a sound defense to the claim in the Chicago proceeding? If so should an injunction issue in this case?

At this stage General invokes the doctrine of Kessler v. Eldred—a doctrine accepted and established in the law of patents. Eldred was a competitor with Kessler in the manufacture and sale of similar electric lamp lighters. Eldred brought suit against Kessler in the District of Indiana alleging infringement of his Chambers patent. The court found for Kessler on the issue of noninfringement and dismissed the bill. The decree was affirmed by the Circuit Court of Appeals for the Seventh Circuit. 106 F. 509. Subsequently Eldred filed a bill for infringement in the Western District of New York against a customer of Kessler, alleging infringement of the same patent. Kessler assumed the defense of the customer's suit. Thereupon Kessler filed a bill against Eldred in the Northern District of Illinois to enjoin Eldred from prosecuting suits against any one for infringing the Chambers patent. In due course this case found its way to the Supreme Court of the United States. Speaking of the decision in the first suit in which it was held that the Kessler lighter did not infringe the Chambers patent, the Supreme Court said:

"* * * The question here is whether, by bringing a suit against one of Kessler's customers, Eldred has violated the right of Kessler. The effect which may reasonably be anticipated of harassing the purchasers of Kessler's manufactures by claims for damages on account of the use of them would be to diminish Kessler's opportunities for sale. * * * Any action which has such results is manifestly in violation of the obligation of Eldred, and the corresponding right of Kessler, established by the judgment. Leaving entirely out of view any rights which Kessler's customers have or may have, it is Kessler's right that those customers should, in respect of the articles before the court in the previous judgment, be let alone by Eldred, and it is Eldred's duty to let them alone. The judgment in the previous case fails of the full effect which the law attaches to it if this is not so. If rights between litigants are once established by the final judgment of a court of competent jurisdiction those rights must be recognized in every way, and wherever the judgment is entitled to respect, by those who are bound by it. Having, then, by virtue of the judgment, the right to sell his wares freely, without hindrance from Eldred, must Kessler stand by and see that right violated, and then bring an action at law for the resulting damage, or may he prevent the infliction of the unlawful injury by proceedings in personam in equity? If Eldred succeeds in his suit against one of Kessler's customers, he will naturally bring suits against others. He may bring suits against others, whether he succeeds in one suit or not. There may be, and there is likely to be, a multiplicity of suits. It is certain that such suits, if unsuccessful, would, at the same time, tend to diminish Kessler's sales, and to impose upon him the expense of defending many suits in order to maintain the right which, by a judgment, has already been declared to exist. If the suits are successful the result will be practically to destroy Kessler's judgment right." Kessler v. Eldred, 206 U.S. 285, 289, 27 S.Ct. 611, 613, 51 L.Ed. 1065.

Obviously Kessler v. Eldred controls where the two systems are the same.

There is a further aspect of this case. In the opinion filed in the New York suit the district judge stated that claim 11 of Ruthven patent No. 1,470,107 was the only claim "controverted". The Circuit Court of Appeals stated that claim 11 "alone was in issue". Having disclaimed claim 11 Union argues that there is and can be no adjudication of the other Ruthven claims. This is the crux of the present case.

The amended bill of complaint alleged that all claims of the patent were infringed. These broad allegations as to infringement were put in issue by the answer. Union by its own act voluntarily elected to go to trial in the New York suit upon the question of the validity and infringement of claim 11 only and to disregard the question of the validity and infringement of the other 69 claims. The amended bill of complaint was dismissed. This decision of the New York court must be deemed to have been an adjudication

respecting all the claims of the patent so far as they may be asserted against General and its customers. From the pleadings recited in the "statement of facts" it clearly appears that all the claims of the Ruthven patent were put in issue by the pleadings. This is true of the issue framed by the original bill and answer. It is equally true of the issue framed by the amended bill and answer.

"It is true that both the courts which passed upon the issues raised in the former suit expressly limited their investigation to the two claims upon which the then complainant elected to stand, and that they expressly abstained from giving any opinion regarding the other seven claims of his patent. But this was the result of the patentee's own choice. It was not the result, so far as appears, of any request or consent on the part of his adversary or of any ruling by the court. He had by his bill invoked the decision of the court upon the validity and scope of his entire patent in its application to the alleged infringing articles, and had found himself opposed by the alleged infringer upon all the points involved in the controversy he thus opened, and he cannot say that he has not had his day in court upon all the questions thus raised. * * * If any claims of his patent were not expressly dealt with by the court, it was not because they were not before the court for its decision, but because he voluntarily abandoned the attempt to make good his contention regarding them. So far as they are concerned, he must now abide the final result." Marshall v. Bryant Electric Co., 1 Cir., 185 F. 499, 500.

To the same effect are Great Northern Ry. Co. v. General Railway Signal Co., 8 Cir., 57 F.2d 457; Union Steam Pump Co. v. Manton-Gaulin Mfg. Co., D.C., 272 F. 773.

■■■ The allegation in paragraph 12 of Union's answer that it had no knowledge of the installation of the train control system by the Chicago and North Western Railway Company at the time of the trial of the New York action is refuted by its own letter to the Chicago and North Western Railway Company of January 6, 1933. The New York suit was tried in July, 1933. It is certain Union had knowledge of the installation on the Chicago and North Western Railway six months before that trial. It is no answer for Union to say that it did not know the Chicago and

North Western system had been installed by General. With knowledge of the fact of the installation and with the belief that the installation infringed its patent, Union should have used reasonable diligence to inform itself of all the facts. The slightest inquiry would have revealed to Union that General manufactured and sold the system to Chicago and North Western Railway Company. It is incredible that Union did not share the knowledge disseminated by trade journals respecting a competitor having its principal place of business in the same town with Union.

By filing a bill in the New York suit praying for an accounting with respect to "any train control apparatus" manufactured by General which embodied the invention of patent No. 1,470,107, Union was in a position to demand that General account for the Chicago and North Western installation as well as for the New York Central installation. If Union had been successful in New York, it would have demanded that the master determine the damages due to it from the manufacture and sale by General of both systems. It is fundamental that a complainant is not at liberty to split up causes of action against a particular defendant for the infringement of a patent.

■■■ "A patentee who sues an infringer can recover in one suit, either at law or in equity, for all the damages caused by all or any acts of infringement of which the defendant has been guilty. Wilder v. McCormick, Fed.Cas.No.17,650, 2 Blatchf. 31. But after one judgment has been recovered, he cannot sue the same defendant again for other acts of infringement during the same period. Horton v. New York Cent. & H. R. R. Co. (C.C.) 63 F. 897. * * * To permit a patentee who has established his patent in a suit for one infringement to go on bringing separate suits against the same defendant for each separate act of infringement would be a gross injustice, and in violation of those fundamental principles of law that it is a matter of public interest that litigation be terminated, and that judgments are, as a general rule, conclusive as to all facts which have been or which might have been litigated between the parties in the original suit." Panoulias v. National Equipment Co., D.C., 198 F. 493, 494.

The motion for a preliminary injunction should be granted.