59 N.J. Super. 6 (1959)
157 A.2d 30
GOLD FUEL SERVICE, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ESSO STANDARD OIL COMPANY, A CORPORATION OF THE STATE OF DELAWARE, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided December 21, 1959.
*9 Messrs. Pollis, Williams & Pappas (Mr. Sam Weiss appearing), attorneys for plaintiff.
Messrs. Stryker, Tams & Horner (Mr. Burtis W. Horner appearing), attorneys for defendant Esso Standard Oil Company.
SCHERER, J.S.C.
The amended complaint alleges that the predecessor of the plaintiff was, for many years prior to December 10, 1957, in the business of fuel oil distribution to industrial and other consumer-level users in this vicinity; that on December 10, 1957 the plaintiff corporation was formed, which absorbed all of the business, good will and assets of the predecessor partnership and continued the business of the partnership, and, in particular, the servicing of the accounts of the defendants Cooper Alloy Corporation and Stainless Engineering & Machine Works (hereinafter jointly referred to as "Cooper"); that this account constituted the major portion of the business and income of the plaintiff and its predecessor, to the extent that the loss of the account would cause plaintiff to suspend or cease operations; that plaintiff and its predecessor, for 24 years, sold fuel oil to Cooper at an average margin of profit of 3¢ per gallon (wherever figures are given, they refer to the rate per gallon), which fuel oil it purchased from independent suppliers at a rate permitting such profit; that said profit rate has been standard in the industry, and independent suppliers and major companies, including the defendant Esso Standard Oil Company (hereinafter referred to as "Esso"), have been selling fuel oil to wholesalers and distributors on such profit margin; that on or about December 13, 1958 Esso induced Cooper to terminate its relations with plaintiff by offering to sell fuel oil to Cooper at a rate below that at which Esso and other major companies and independent suppliers had been selling to distributors like plaintiff; that Esso sold to Cooper at 10.2¢, a rate substantially below that at which plaintiff could purchase *10 fuel oil from any suppliers in the industry, whether major or independent; that such action on the part of Esso constituted unfair competition, a malicious interference with the business and profits of the plaintiff, and a violation of public policy. The complaint further charges that such sale is not fair and lawful competition and therefore violates 15 U.S.C.A. § 1; that it is but one of a series of similar sales to ultimate consumers at prices lower than those at which wholesalers or distributors can purchase fuel oil for resale, and thus is an attempt by Esso to monopolize a part of interstate commerce in fuel oil, in violation of 15 U.S.C.A. § 2; that Esso is engaged in interstate commerce; that the sale was without legal justification and therefore is not fair and lawful competition and constitutes a violation of 15 U.S.C.A. § 13a; and that Esso is liable to plaintiff in the sum of $500,000 as compensatory and punitive damages.
There is a second count in the amended complaint which repeats the allegations of the first count and further alleges that Cooper knew that Esso was selling fuel oil to it at a price lower than that at which plaintiff could purchase it in the open market. An accounting of the profits on this count is sought from Esso, together with a restraint against Esso's selling at prices lower than those at which plaintiff can purchase and a restraint against the three defendants from dealing with each other.
By order dated September 30, 1959 the amended complaint was dismissed by the plaintiff, with prejudice, as against Cooper, leaving only Esso as a defendant. The latter now moves for summary judgment dismissing the amended complaint on the ground that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. R.R. 4:58.
Affidavits have been filed by both sides as to the surrounding circumstances of this transaction, as a result of which Cooper terminated its relations with plaintiff and obtained its fuel oil requirements from Esso. The affidavits, *11 in my opinion, disclose clearly that there is no dispute as to any material fact and that this is an appropriate case for the entry of summary judgment (Frank Rizzo, Inc. v. Alatsas, 27 N.J. 400, 405 (1958)), even giving proper weight to the most favorable inference rule (Savarese v. Pyrene Manufacturing Co., 9 N.J. 595 (1952); McDermott v. Botwick, 38 N.J. Super. 528 (App. Div. 1956)).
Briefly, the facts disclosed by the affidavits and exhibits are that Cooper, in 1958, became dissatisfied with the price plaintiff was charging it for fuel oil and so advised plaintiff. Plaintiff then reduced its price from 12.7¢ to 12.5¢. In October 1958 Cooper requested Esso to make a survey of its plants to determine whether or not a saving could be made in the cost of No. 2 fuel oil. Cooper was using several hundred thousand gallons of this grade oil annually. Esso made a survey and reported to Cooper, in a letter of November 6, 1958, that it should continue to use No. 2 fuel oil. It also advised that, for this grade of fuel oil in tank transport quantities, Esso's price was 10.05¢, plus .33¢ for freight, or a total cost of 10.38¢. Cooper sought bids from other suppliers, including the plaintiff, and one bidder quoted a price of 10.2¢ delivered at its plant. Cooper so advised Esso and stated that it would like to do business with Esso if the above quoted price could be met. Esso agreed to meet the competitive price of 10.2¢. This figure was arrived at by maintaining the basic price for the fuel oil of 10.05¢, but reducing its haulage charge from .33¢ to .15¢. On this basis, Cooper awarded the contract to Esso, to become effective December 1, 1958. Plaintiff requested that its contract be continued for two weeks beyond that date in order to permit it to adjust its commitments with its suppliers. This request was granted, and Esso's contract actually became effective December 16, 1958.
Plaintiff has instituted another suit in the United States District Court for the District of New Jersey, alleging the same facts as are above set forth, and the relief there sought is based upon 15 U.S.C.A. §§ 13, 13a, 15 and 26, with *12 a prayer for treble damages. This suit is still pending and has not come to trial.
On the argument the plaintiff conceded that there had been no unfair competition. Plaintiff also admitted that it cannot have a cause of action in this court based solely upon a federal statute, but must bring any such statutory action in the federal court. But, plaintiff argues that the federal anti-trust statutes, and, in particular, the Clayton and Robinson-Patman Acts (15 U.S.C.A. § 1 et seq.), establish a standard of conduct for fair competition in business transactions in interstate commerce, and that any departure from this standard constitutes unfair competition and is actionable in the state, as well as the federal, courts. Plaintiff concedes that the acts of Esso complained of here would not give rise to a cause of action at common law. It argues that its cause of action is one of trespass on the case, based upon the actions of Esso which it alleges were not in accordance with the standard of fair competition established by the federal statutes.
The common law action of trespass on the case is regarded as in the nature of an equitable action founded on the conscience and the justice of the plaintiff's right to recover. The intent of the wrongdoer is not a conclusive factor. 52 Am. Jur., Trespass on the Case, sec. 4, p. 901 (1944). Trespass on the case for injury sustained by violation of a statutory obligation is maintainable only where the statutory remedy is unavailable or inadequate. 52 Am. Jur., Trespass on the Case, sec. 13, p. 904 (1944). It is an established principle that if a statute creating a new right or cause of action where none existed before also provides an adequate remedy for the enforcement of the right created, and the statutory remedy is not by its terms cumulative, the remedy thus prescribed is exclusive. In such case, such remedy must be pursued in the enforcement of the right to the exclusion of any other remedy. 50 Am. Jur., Statutes, sec. 596, p. 593 (1944). As will be shown hereafter, the plaintiff's cause of action, if it has one, is a right *13 which did not exist at common law and was created by a federal statute, in which statute plaintiff is given an adequate remedy, which is not cumulative, but exclusive.
The essence of unfair competition is aptly stated in American Shops, Inc. v. American Fashion Shops of Journal Square, Inc., 13 N.J. Super. 416, 420 (App. Div. 1951), to be fair play, and "The law will not permit the trespasser to take the crop away from the sower." The law guards the good will of a business and protects against unlawful injury. J.B. Liebman & Co., Inc. v. Leibman, 135 N.J. Eq. 288 (Ch. 1944); Sachs Furniture Radio Co. v. Sachs Quality Stores Corp., 39 N.J. Super. 70 (App. Div. 1956). Except as certain conduct, which was lawful at common law, is defined as unfair competition by the federal statute, the plaintiff has no right to be protected against competition, but only to be free from malicious and wanton interference, disturbance or annoyance. Louis Kamm, Inc. v. Flink, 113 N.J.L. 582, 587, 99 A.L.R. 1 (E. & A. 1934); George F. Hewson Co. v. Hopper, 130 N.J.L. 525 (E. & A. 1943); Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950).
The argument that the lowering of prices by Esso below that at which plaintiff could purchase constitutes unfair competition was rejected in Secatore's Inc. v. Esso Standard Oil Company, 171 F. Supp. 665 (D.C. Mass. 1959), where a violation of 15 U.S.C.A. § 13(a), was charged, and the court said, at page 667:
"* * * Clearly there would be no discrimination if defendant sold to these ultimate consumers at the same price at which it sells to plaintiff. But even then plaintiff could not compete with defendant for their business for it would as a matter of practical economics have to charge them more than it paid defendant for the gasoline in order to cover its expenses of operation, to say nothing of making a profit on the transaction. If plaintiff cannot successfully compete with defendant for these customers when there is no price differential, it is not harmed by any further reduction which defendant may make in the price it charges to them. Jarrett v. Pittsburgh Plate Glass Co., 5 Cir., 131 F.2d 674, 676; A.J. Goodman & Son, Inc. v. United Lacquer Mfg. Corporation, D.C., 81 F. *14 Supp. 890, 893. Defendant is under no obligation to sell to plaintiff at a lower price than it charges to consumers who buy directly from it in order to enable plaintiff to compete with it for the business of those customers. But unless it does this, plaintiff will never be able to compete successfully with defendant, at least with respect to price."
Further, this argument about price is in direct conflict with the plaintiff's proof. It introduced photostatic copies of The Journal of Commerce, a well-known trade publication, in which there is published daily the price of No. 2 and other fuel oil and petroleum products in the New York Harbor area, the locale with which we are here concerned. Bearing in mind that Esso's basic quotation to Cooper for No. 2 fuel oil was 10.05¢ in its letter of November 6, 1958, and that its final agreement made some time later in November 1958 was still the same, we turn to The Journal of Commerce for quotations for this period for tank car lots  the delivery unit bid on. On November 18, 19 and 20 Esso quoted No. 2 fuel oil at 9.9¢. Thus, it is clear that the price at which plaintiff and others could have bought from Esso during the period of the negotiations was less than that charged to Cooper. During the same period, two other large suppliers, Socony Mobil and Atlantic Refining, quoted either the same or slightly higher prices than Esso. The allegation that Esso sold fuel oil to Cooper at unreasonably low prices to eliminate plaintiff as a competitor is therefore disproved by the plaintiff's own evidence.
Esso did not seek this business, but, along with other suppliers, including the plaintiff, was asked by Cooper to submit bids. Plaintiff submitted a bid of 11.4¢. This contrasts with its original price to Cooper of 12.7¢, which it subsequently reduced to 12.5¢ upon learning of Cooper's dissatisfaction with the price. If the defendant's motives were proper, and the means used were proper, there is no unfair competition. Sustick v. Slatina, 48 N.J. Super. 134 (App. Div. 1957).
Plaintiff's brief contains a plethora of citations and quotations stating the general principles of unfair competition, *15 but it does not undertake to equate these principles to the undisputed facts of this case. Nowhere does the plaintiff endeavor to substantiate that the acts of Esso were unlawful, unfair, fraudulent, done with improper motive, or harmful to the general public. Merely to claim that this is so is not sufficient. As was said in Alexander v. Texas Company, 149 F. Supp. 37 (D.C.W.D. La. 1957), at page 41:
"All he has done is to level a broad charge against defendant that it was guilty of `price discrimination'  a mere legal conclusion  in that he had to pay more for gasoline than did the twelve other Texaco dealers named, but he does not allege in detail, as he must, how or to what extent the difference in price injured, destroyed or prevented competition between his business and that of any or all of the favored dealers."
Nor does the plaintiff attempt to prove, or set forth facts from which it could be inferred, that Esso made similar sales to ultimate consumers at prices lower than those at which distributors could purchase fuel oil for resale.
The federal anti-trust statutes pleaded by the plaintiff make unlawful every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce (15 U.S.C.A. § 1); monopolizing, or attempting to monopolize, or combining or conspiring to monopolize, trade or commerce (15 U.S.C.A. § 2); selling, or contracting to sell, in commerce at discounts, rebates or allowances which are discriminatory against competitors of the purchasers, for the purpose of destroying competition or eliminating a competitor, or selling goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor (15 U.S.C.A. § 13(a). There are no facts pleaded or set forth in plaintiff's affidavits, or other evidence, which bring the acts of Esso within the orbit of the conduct proscribed by the cited statutes, assuming that these statutes give the plaintiff a cause of action in this court.
As authority for its position, the plaintiff relies upon Guiterman v. Pennsylvania R. Co., 48 F.2d 851 (D.C. *16 E.D.N.Y. 1931); Hand v. Kansas City Southern Ry. Co., 55 F.2d 712 (D.C.S.D.N.Y. 1931); Venner v. Pennsylvania Steel Co., 250 F. 292 (D.C.N.J. 1918). Although these cases, at first glance, seem to support the plaintiff's theory that acts forbidden by the anti-trust laws are actionable in state courts, a closer examination of the facts of the cases discloses that in each one there was also asserted a right to relief in addition to that provided by the federal anti-trust law. See Meyer v. Kansas City Southern Ry. Co., 84 F.2d 411 (2 Cir. 1936), certiorari denied 299 U.S. 607, 57 S.Ct. 233, 81 L.Ed. 448 (1936).
The general rule is well settled that only the federal courts have jurisdiction over anti-trust suits. United Artists Corp. v. Ancore Amusement Corp., 91 F. Supp. 132, 133 (D.C.S.D.N.Y. 1950). And, as stated above, plaintiff has such a suit now pending in the federal court, based upon the federal anti-trust statutes.
The plaintiff argues in its brief that the instant case is not upon any of the federal anti-trust laws, but is a common law action for the tort of unfair competition by illegal means. But, the facts and its own admissions are in direct conflict with this argument. It admits that no private right of action exists in the federal court for a violation of 15 U.S.C.A. § 13a, the section dealing with, among other things, the selling of goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor (Safeway Stores v. Vance, 355 U.S. 389, 78 S.Ct. 358, 2 L.Ed.2d 350 (1958)), but plaintiff says that a violation of section 2 of the Clayton Act (discrimination in prices) gives rise to a private cause of action (Nashville Milk Co. v. Carnation Co., 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340 (1958)). The Safeway Stores case sustained a dismissal of the complaint "insofar as it rests on alleged unlawful selling at unreasonably low prices," but went on to say "that the respondent was entitled to a trial as to the charges of unlawful price discrimination." *17 There is no charge of unlawful price discrimination here, but only that there were sales at unreasonably low prices.
It is clear, despite plaintiff's assertion to the contrary, that this action is one based solely upon the federal statute and, there being a complete and adequate remedy in the federal court, there is no reason why this suit should be continued in this court. Claflin v. Houseman, 93 U.S. 130, 23 L.Ed. 833 (1876).
Finally, the plaintiff argues that its cause of action is also based upon Esso's violation of the public policy of this State because the standards of fair competition in business are contained in 15 U.S.C.A. § 1 et seq., and therefore these standards, being part of the federal statute law, become public policy in New Jersey. Authority for this argument is stated to be Allen v. Commercial Casualty Insurance Co., 131 N.J.L. 475 (E. & A. 1944), where the court said, at p. 478:
"The sources determinative of public policy are, among others, our federal and state constitutions, our public statutes, our judicial decisions, the applicable principles of the common law, the acknowledged prevailing concepts of the federal and state governments relating to and affecting the safety, health, morals and general welfare of the people for whom government  with us  is factually established. * * *."
Assuming, without deciding, that plaintiff's argument is correct, no violation of the federal statute has been shown; hence, there is no violation of the public policy of this State. Cf. Hoffmann-LaRoche, Inc. v. Weissbard, 11 N.J. 541 (1953).
Plaintiff admittedly has no private right of action under 15 U.S.C.A. § 13a, the section which makes it unlawful to sell goods at unreasonably low prices for the purpose of destroying competition or eliminating a competitor. That section is penal only. 15 U.S.C.A. § 15, provides that any person injured in his business or property by reason of anything forbidden in the anti-trust laws may sue therefor in any district court of the United States. Thus, it is clear *18 that the remedy given to the plaintiff for any injury caused by the violation of the anti-trust laws by Esso is actionable in the federal courts. And, it is only actionable there. See Bee Machine Co. v. Freeman, 42 F. Supp. 938, 939 (D.C. Mass. 1942), where it is stated that actions based solely upon anti-trust laws can be brought only in the federal courts.
I am of the opinion that plaintiff's cause of action is based solely upon the federal statute, which provides adequate and complete remedy. However, it should be noted that merely because certain acts are required or prohibited by a statute, a cause of action does not arise because of violation of the statute. As was said in Osback v. Tp. of Lyndhurst, 7 N.J. 371, 376 (1951), where the Legislature passes a statute directing that, as a matter of public policy, certain acts be performed, but fails to provide a penalty for nonperformance or a remedy for those who may suffer through failure of such performance, it does not give rise to a cause of action.
For the reasons above stated, the defendant's motion for summary judgment will be granted, dismissing the amended complaint with costs. A judgment should be presented in accordance with these conclusions.