**GOLD FUEL SERVICE, INC., Plaintiff,**

v.

**ESSO STANDARD OIL COMPANY, Defendant.**

**Civ. A. No. 398.**

United States District Court
D. New Jersey.
June 12, 1961.

Pollis, Williams & Pappas, Elizabeth, N. J., for plaintiff.

Stryker, Tams & Horner, Newark, N. J., for defendant.

WORTENDYKE, District Judge.

This action is for treble damages, brought under 15 U.S.C.A. § 15. There is pending before the Court defendant's motion to dismiss the amended complaint for failure to state a claim upon which relief can be granted, F.R.Civ.P. 12(b), 28 U.S.C.A., and, in the alternative, for summary judgment, F.R.Civ.P. 56(b), upon the asserted ground that there is an absence of any genuine issue of material fact and that the defendant is entitled to judgment as a matter of law. Trial by jury has *not* been demanded. It is, therefore, waived, F.R.Civ.P. 38(d).

The motion was argued orally before the late Judge Mendon Morrill of this Court on March 28, 1960, upon the briefs previously submitted by the parties. He reserved decision upon the motion which was still pending at the time of his death.

The case has now been reassigned to the writer of this opinion.

The complaint was originally in two counts. The second count has been dismissed by a stipulation filed May 6, 1960. There remains a single cause of action in the complaint (after two amendments thereof, and the stipulation referred to), charging violations of sections 1, 2 and 13a of Title 15 of the United States Code. Plaintiff alleges that for 24 years (as a partnership and corporation) it had been purchasing fuel oil from independent suppliers at prices permitting a margin of profit of 3¢ per gallon upon its sales to retailers and consumers in portions of Union and Essex Counties in the State of New Jersey; and that among the customers which it served were Cooper Alloy Corporation (Cooper) and Stainless Engineering and Machine Works (Stainless) (also sometimes herein jointly referred to as Cooper-Stainless). Plaintiff charges that on or about December 13, 1958 the defendant (Esso), a fuel oil supplier, with knowledge of the prices at which plaintiff had been buying its supply, and of the existing customer relationship between Cooper-Stainless and plaintiff (Gold Fuel), induced these customers to terminate their business relationship with plaintiff by offering to sell fuel oil directly to them at a delivered price of 10.2¢ per gallon. Gold Fuel says that this price consisted of the basic posted price of 9.9¢ per gallon, below which the commodity was not available to the plaintiff from any source in the market, plus a haulage charge of .30¢ per gallon, which was .03¢ per gallon less than the lowest price at which Gold Fuel could obtain haulage for delivery to its said customers. Plaintiff therefore charges that, in continuing to sell and deliver fuel oil to these former customers, Esso is violating sections 13a, 1 and 2 of Title 15 of the United States Code, in that Esso's sales and deliveries to these customers at that price (1) are at prices substantially below those at which plaintiff can purchase from any supplier, (2) constitute unfair competition and a malicious interference with the business and profits of plaintiff, (3) lessen or prevent competition between Esso and Gold Fuel, and (4) constitute an attempt by Esso to monopolize a part of interstate commerce in fuel oil. The complaint discloses that Gold Fuel and Cooper-Stainless conduct their respective businesses within an area embracing Union and Essex Counties in New Jersey. It is also alleged that Esso is engaged in interstate commerce because it sells from temporary storage tanks at Linden, New Jersey, which are supplied and replenished by transportation from without the State.

Insofar as the first count of the complaint is concerned (the only count remaining before the Court), Esso's answer denies the critical allegations thereof, and affirmatively pleads as follows:

(1) Esso denies any violation of Title 15.

(2) Gold Fuel is not and never was a customer of Esso, had never purchased defendant's products, and is not on the same competitive level as Cooper-Stainless.

(3) The price quoted by Esso to Cooper-Stainless was made in good faith to meet an equally low price quoted by competitors (of Esso) for supply of the same grade and quantity.

(4) Cooper-Stainless had been purchasing fuel oil from plaintiff at a price approximating 12.7¢ per gallon. Cooper-Stainless, in the latter part of 1958, invited quotations from Esso and other suppliers for delivery of such oil to their storage tanks at Hillside. The price quoted by Esso, and by at least two other suppliers, was approximately 1¢ per gallon less than that bid by Gold Fuel. Cooper-Stainless accepted the bid submitted by Esso because plaintiff was unable to meet that price. Esso's bid was made in good faith in order to meet an equally low price quoted by Esso's competitors.

(5) Plaintiff suffered no recoverable damage and has no standing to bring this suit.

(6) In the transaction complained of Esso was not engaged in interstate commerce.

(7) The allegations of the complaint fail to disclose jurisdiction in this Court, or to set forth a cause of action upon which relief may be granted against Esso.

In support of its motion, Esso presented several affidavits. One affidavit was filed in behalf of Gold Fuel. Upon the oral argument defendant's motion was treated as one for summary judgment only, and as such will be considered in this opinion. F.R.Civ.P. 12(b).

Before proceeding with an analysis of the contents of the moving and counter-affidavits as they relate to the factual allegations of the complaint, I conclude, as a matter of law, that the conduct of Esso of which Gold Fuel complains is not in violation of 15 U.S.C.A. § 13a. Indeed, plaintiff admits in its brief and conceded upon the oral argument that § 13a alone affords no basis for its recovery in this action. This conclusion is fully supported by Nashville Milk Co. v. Carnation Company, 1958, 355 U.S. 373, 78 S.Ct. 352, 2 L.Ed.2d 340. See also Safeway Stores, Inc. v. Vance, 1958, 355 U.S. 389, 78 S.Ct. 358, 2 L.Ed.2d 350. Therefore, unless the acts of Esso violate either § 1 or § 2 [1] of Title 15 of the United States Code, no relief may be granted to the plaintiff upon its complaint and the defendant would be entitled to summary judgment.

Summary judgment should not be entered unless "the pleadings, * * * and admissions on file, together with the affidavits, * * *, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." F.R.Civ. P. 56(c). The Third Circuit Court of Appeals has ruled that summary judgments may not be granted when there is a genuine issue as to a material fact presented in an action. Kress, Dunlap & Lane, Ltd. v. Downing, 1960, 286 F.2d 212; Lynn v. Smith, 1960, 281 F.2d 501; Bragen v. Hudson County News Co., Inc., 1960, 278 F.2d 615. The Bragen case cited Hiern v. St. Paul-Mercury Indemnity Co., 5 Cir., 1959, 262 F.2d 526. In Hiern the Court, at page 529, used the following language:

"On a motion for summary judgment, the pleadings of the opposing party must be taken as true, unless by the admissions, depositions or other material introduced it appears beyond controversy otherwise." Citing McCombs v. West, 1946, 5 Cir., 155 F.2d 601.

This accords with the views of the Third Circuit expressed in Frederick Hart & Co., Inc. v. Recordgraph Corp., 1948, 169 F.2d 580. "The Hart case is not authority for the proposition * * * that the conclusory allegations of the (counter-claim), denied by (plaintiff), raise fact issues foreclosing the grant of summary judgment. The Hart case merely broadens the area in which the search for fact issues must be made; it in no way impairs the principle that specific, basic facts must be alleged and controverted before the 'genuine' issue contemplated by Rule 56 arises. This requirement is of course not satisfied by * * * generalities contained in the (counter-claim)." Forman, S. J., in Vanity Fair Mills v. Cusick, D.C.N.J.1956, 143 F. Supp. 452, 458.

The first count of the complaint, as last amended, charges that the sales and deliveries of fuel oil by Esso to Cooper-Stainless are (par. 12) "the outgrowth

---

[1]. The pertinent parts of §§ 1 and 2 of Title 15, read as follows:

"§ 1. Trusts, etc., in restraint of trade illegal; exception of resale price agreements; penalty.

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *.

* * * * *

"§ 2. Monopolizing trade a misdemeanor; penalty.

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * *."

and result of a combination or conspiracy in restraint of interstate commerce by the defendant, Esso Standard Oil Company, with other major suppliers in the fuel oil industry, in violation of Title 15, U.S.C.A. Sec. 1," and (par. 13) "in violation of Title 15, U.S.C.A. Sec. 2, in that they are but some of a series of similar sales and deliveries direct to ultimate consumers at prices lower than those at which wholesalers or distributors can purchase in the fuel oil market in tank-car lots and deliver the same on resale, to ultimate consumers, thus constituting an attempt by the defendant, Esso Standard Oil Company, to monopolize a part of interstate commerce in fuel oil."

Of the six affidavits presented by the defendant in support of its motion, three were made by its employees and the remaining three by employees of Cooper-Stainless. Plaintiff's sole counteraffidavit was that of its vice-president, Deutsch.

Esso's Industrial Sales Manager, Bardsley, deposes that fuel oil is offered for sale by Esso and other suppliers in the market to consumers at prices varying according to the quantity purchased at each delivery. For example, a consumer taking a delivery of at least four thousand gallons is charged a "posted tank transport" basic price, while one who takes a lesser quantity is charged a "posted tank wagon" basic price. At the time of the occurrence of which plaintiff complains the posted tank transport price was 10.05¢ and the posted tank wagon price was 13.7¢. A delivery made by Esso equipment to the consumer carried a haulage charge in addition to the basic posted tank price. On October 23, 1958, at the request of the executive-vice-president of Cooper-Stainless, Bardsley met with him to discuss the fuel oil needs of Cooper-Stainless. Bardsley was advised that Cooper-Stainless was using several hundred thousand gallons of No. 2 fuel oil annually, and that it was de-

sirous of effecting savings in its fuel oil costs. Bardsley undertook to have Esso's sales representative, Sims, visit the Cooper-Stainless plants to make a survey of their requirements, and quote prices. On November 3, 1958, Sims did visit the Cooper-Stainless plants and submitted a price of 10.38¢ per gallon for No. 2 fuel oil, comprising the then posted tank transport price of 10.05¢ plus Esso's normal haulage charge of .33¢. Bardsley denies that the Cooper-Stainless business was ever solicited by Esso, and states that the price which Sims quoted was the standard price for any consumer purchasing in similar quantities from Esso's bulk sales plant at Linden, New Jersey. Bardsley also denies that he ever consulted or arranged with any competitor of Esso to fix the price of fuel oil. Such price on the tank transport basis to consumers was twice revised prior to December 16, 1958, when the first delivery was made to Cooper-Stainless. On November 21, 1958 there was an increase of .5¢ per gallon, resulting in a delivered price of 10.55¢ per gallon, plus a .15¢ delivery charge,[2] and on December 16, 1958 there was a further increase of .3¢ which brought the posted tank transport price to 10.85¢ to which was added the delivery charge of .15¢ making a total of 11¢ per gallon, delivered. On November 6, 1958 Esso's tank transport price at its refinery to *resellers* such as Gold Fuel was 9.9¢ per gallon. This was increased to 10.4¢ on November 21, and to 10.7¢ on December 16.

The respective affidavits of the vice-president and treasurer, executive vice-president, and purchasing agent of Cooper-Stainless, disclose that the purchases which it made from Gold Fuel, prior to September 1958, were upon an oral undertaking that deliveries would be paid for as made. In the latter month, Zolin, the treasurer of Cooper-Stainless, complained to Gold Fuel that its price was too high, and thus obtained a reduction from 12.7¢ to 12.5¢ per gallon. Mean-

2. Sims deposes that the haulage price of .33¢ per gallon was reduced to .15¢ per gallon to meet the price quoted to Cooper-Stainless by a competing supplier.

while, Cooper-Stainless invited all the suppliers in the general area, including Esso, to visit the Cooper-Stainless plants, to suggest suitable grades of fuel oil and to submit price bids. Esso submitted a bid which was as low as any other, and because of the high regard in which that supplier was held by Cooper-Stainless, the Esso bid was accepted. Deliveries under the new arrangement were supposed to commence in November 1958, but Cooper-Stainless yielded to the importunity of Gold Fuel to continue purchasing from that company for several weeks longer to permit readjustment of its supply sources to the changed situation. Accordingly, Esso deliveries did not commence until December 16, 1958. At the request of Gold Fuel, Cooper-Stainless wrote a letter, dated December 5, 1958, confirming discontinuance of Gold Fuel's deliveries which states in part: "Although we have found your service to be satisfactory for the many years that we have been doing business, we now find that your recent quotation of 11.4¢ which includes hauling, is not satisfactory and have made other arrangements."

In opposition to the foregoing moving affidavits, that of the vice-president of Gold Fuel states that Esso's references to "tank transport" prices should be to "tank car" prices, to conform with the listings in the Journal of Commerce. He adds that the normal haulage charge from Linden (Esso's wholesale outlet) to Hillside (the Cooper-Stainless plants) is .33¢ per gallon, and that plaintiff had been unable to obtain haulage at any lower figure. When the basic posted price was 9.9¢ in the New York Harbor area, plaintiff could not deliver to Cooper-Stainless for less than 10.23¢ (that is the base price of 9.9¢ plus .33¢ for haulage) and therefore, could not meet the Esso bid to Cooper-Stainless of 10.20¢ per gallon without loss. Likewise, says plaintiff, when the basic posted price was raised to 10.4¢ it could not deliver at less than 10.73¢ (i. e. 10.4¢ plus .33¢) and therefore could not meet Esso's increased price of 10.7¢ without loss; and

when the basic posted price rose to 10.7¢ plaintiff could not deliver for less than 11.03¢ (i. e. 10.7¢ plus .33¢), and therefore could not meet Esso's price to Cooper-Stainless of a flat 11¢ per gallon, without loss. Deutsch says that Gold Fuel's final bid to Cooper-Stainless of 11.40¢ was made when the basic posted price was 9.9¢, in an attempt to compete with the major suppliers, including Esso, whose identical final bids were 10.2¢. His affidavit concludes: "Better and more direct evidence of most of the foregoing and of other facts within the superior or exclusive knowledge of the defendant could be produced by the plaintiff with the aid of interrogatories and requests for admissions."

As of March 1, 1960, the date upon which Deutsch's affidavit was sworn to, there remained unanswered interrogatories served upon the defendant on December 21, 1959. Apparently no answers were made to these interrogatories because the parties were then endeavoring to agree upon the "more definite statement" with reference to the proposed amended complaint, as ordered by Judge Morrill on October 7, 1959. This question was resolved at the end of 1959, the amended complaint was filed January 7, 1960, and after obtaining an extension of time to answer or otherwise proceed, the defendant made the present motion on January 26, 1960, which was argued on March 28, 1960. No discovery proceedings are in the official file, although F.R. Civ.P. 5(d) provides that all papers after the complaint served upon adversary party, shall be filed (see subdivision (e) of the same rule). What purports to be a copy of the interrogatories is annexed to the plaintiff's brief on this motion. Plaintiff suggests that it might be able, by way of interrogatories, depositions, and/or requests for admissions, to obtain evidence from which inferences might be drawn that the defendant violated one or both of the two sections (1 and 2) of the statute relied upon. The present motion, however, must be considered according to the provisions of F.R.Civ.P. 56(c) upon the "pleadings, depositions, and admis-

sions on file, * * *." What plaintiff might ultimately have caught through a discovery fishing expedition is irrelevant to the motion presently pending. (In this connection, it may be noted that upon the oral argument counsel for the plaintiff unqualifiedly denied that he had any evidence of a conspiracy, or that he had any specific expectation of finding such evidence.)

Excepting conclusory allegations therein, the complaint as amended, amplified and elaborated by plaintiff's responses to defendant's demands for more definite statement, alleges that Esso, with knowledge of plaintiff's relationship to Cooper-Stainless, and the terms upon which plaintiff had been doing business with the latter, induced that consumer to terminate its relationship with Gold Fuel by selling fuel oil at a delivered price of 10.2¢ per gallon, made up of the basic posted price of 9.9¢ per gallon plus a haulage charge of .30¢ per gallon, which haulage charge was .03¢ below the lowest price at which Gold Fuel could effect delivery to the customer. Assuming as true those allegations of the complaint, do the acts complained of therein constitute violations either of § 2 or of § 1 of Title 15 of the United States Code? Gold Fuel contends, if we correctly understand its brief, that by bidding a price to plaintiff's former customers which was lower than that at which plaintiff was able to purchase and deliver fuel oil as a distributor, Esso attempted to monopolize a part of interstate commerce in violation of § 2, and relies, *inter alia,* upon Moore v. Mead's Fine Bread Co., 1954, 348 U.S. 115, 75 S.Ct. 148, 99 L.Ed. 145, for support of that contention. That case is inapropos. It was a treble damage suit for violation of section 2(a) of the Clayton Act as amended by the first section of the Robinson-Patman Act (15 U.S.C.A. § 13(a) ), and of section 3 of the Robinson-Patman Act (15 U.S.C.A. § 13a). 15 U.S.C.A. § 2, which is section 2 of the Sherman Act, was not there involved.

Plaintiff concedes, in response to defendant's demand for a more definite statement, that the monopoly to which the complaint refers does not "arise out of any combination or conspiracy, but as (sic) an unilateral attempt by Esso to monopolize a part of interstate commerce." The more definite statement adds that plaintiff "does not contend * * * that Esso cannot lawfully compete at the retail level, or that it must offer fuel oil to wholesalers and distributors at prices less than that which Esso's consumer-customers pay. The plaintiff contends that Esso can lawfully compete with wholesalers and distributors, so long as it does not offer fuel oil to consumer-customers of such wholesalers and distributors at such unreasonably low prices—i. e., at less than those at which wholesalers and distributors can buy— as to evince the purpose of Esso, and to have the effect, to eliminate competition by wholesalers and distributors with Esso for the custom (sic) of consumer-customers, and to destroy preexisting business relationships by such wholesalers and distributors with their consumer-customers, * * *." This plaint reiterates the charge of unfair competition made in Gold Fuel Service, Inc. v. Esso Standard Oil Company, Chanc.Div. 1959, 59 N.J.Super. 6, 157 A.2d 30, in which the complaint was dismissed. Nashville Milk Co. v. Carnation Company, supra, compels dismissal of this contention. Plaintiff asserts that "competition by Esso at the retail level by unlawful means constitutes in the instant case an attempt to monopolize a part of interstate commerce, whether by sale to the plaintiff's consumer-customers alone at unreasonably low prices, as aforesaid, or by sale to the consumer-customers of wholesalers and distributors other than and in addition to the plaintiff, at unreasonably low prices." These allegations are conclusory and non-factual.

Neither the complaint nor any of the affidavits submitted on the present motion alleges or discloses that Esso enjoys monopoly power, or that such power was used or attempted to be used in an unlawful manner. Section 2 of the Sherman Act proscribes monopolizing,

attempts to monopolize and combinations or conspiracies with another to monopolize any part of interstate commerce. Monopoly power, as contemplated by the language of the section, is the power to control prices or exclude competition. United States v. E. I. Du Pont de Nemours & Co., 1956, 351 U.S. 377, 76 S.Ct. 994, 100 L.Ed. 1264. It is only the combination of power with purpose or intent to monopolize which offends the statute. American Tobacco Co. v. United States, 1946, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575. Klor's v. Broadway-Hale Stores, 1959, 359 U.S. 207, is inapposite here. There is presently no group boycott or conspiracy to monopolize. There is no charge in the complaint as made more definite and certain, nor disclosure in the affidavits upon the present motion that Esso, in bidding a price to Cooper-Stainless which was lower than that which Gold Fuel could meet, manifested or was motivated by a purpose or intent to monopolize the sale of fuel oil in plaintiff's territory. The competition of other large suppliers would not permit such a monopoly. Plaintiff concedes that Esso had a right to sell directly to plaintiff's customers. The customer had a right to seek and obtain the lowest price in the market. It invited bids not only from Esso, but also from other suppliers of equal magnitude, and upon receiving comparable bids, selected that of Esso.

Turning to Section 1 of the Sherman Act, upon which plaintiff also relies for its right to recover here. That section proscribes "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, * * *." I can find among the allegations of the amended complaint as limited or amplified by the more definite statement furnished by the plaintiff, no basis for inferring that defendant has violated section 1 of the Sherman Act. In its response to the defendant's demand that the amended complaint be made more definite and certain, the plaintiff, referring to its charge of combination or conspiracy in restraint of trade, states:

"Basically, the plaintiff's theory is not that it was unable to purchase fuel oil from any supplier at what it regarded as a favorable price. The plaintiff's theory is that it was unable to purchase fuel oil from any supplier at any price less than 10.4, and was thereby unable to compete with Esso Standard Oil Company and the other major supplier bidders for their Cooper-Stainless business."

Plaintiff adds that

"The parallel action of three major suppliers in bidding at 10.4 and 10.2 respectively would inevitably have the effect of eliminating, not merely restraining, the trade of the plaintiff with Cooper-Stainless, and was made possible by the tremendous financial and industrial interstate resources of the three suppliers. At the time that Esso submitted its bid to the consumers Cooper and Stainless at a price lower than that at which the plaintiff distributor was able to purchase for resale to Cooper and Stainless, two other major suppliers, Cities Service Oil Company and Sinclair Refining Company, submitted bids to Cooper and Stainless at prices which were also lower than that at which the plaintiff was able to purchase for resale to Cooper and Stainless."

Plaintiff concludes that the

"[P]arallel actions of Cities Service, Sinclair and Esso purposefully coincided and were the result of prearrangement and understanding by and among Esso, Cities Service and Sinclair, and thus was the result of a combination and conspiracy among them to restrain the trade of the plaintiff with Cooper and Stainless."

As noted above, upon the oral argument counsel for the plaintiff unqualifiedly denied that he had any evidence that there was any evidence of a conspiracy, other than the charged parallelism; and also

denied that he had any specific expectation of finding such evidence. Defendant's affidavits squarely deny the conclusory allegations which plaintiff predicates upon the alleged fact that the three bidding corporations submitted prices with which plaintiff could not compete.

In view of the foregoing facts the allegation of parallel business behaviour is insufficient to support an inference of "conscious parallelism" such as would support a charge of conspiracy, for as the Supreme Court in Theatre Enterprises v. Paramount Film Distributing Corp., 1954, 346 U.S. 537, at page 541, 74 S.Ct. 257, at page 259, 98 L.Ed. 273, said "This Court has never held that proof of parallel business behavior * * itself constitutes a Sherman Act offense."

The prices of No. 2 fuel oil in the New York marketing area were published daily in the Journal of Commerce. Throughout the period November 18 through December 22, 1958, consumer prices were 0.15¢ per gallon higher than the price f. o. b. supplier's plant. The bid of Esso to Cooper-Stainless was as low as that of any other supplier, but no lower. As explained in the affidavit of Esso's New Jersey Division manager, Esso's "posted tank wagon and tank transport prices are calculated by evaluating the wholesale commodity market for No. 2 heating oil in cargo lots on the East Coast. To this cargo price is added a differential which is enough to cover our cost of terminalling plus other marketing expenses in order to load tank cars or transport trucks at the rack at our terminals, plus a margin for reasonable return on investment. It would be against the policy of the company for any employee of the company to enter into any combination or agreement with any competitors fixing or relating to prices of its products, and specifically the company did not consult with, agree or combine with any of its competitors to fix the price of fuel oil which was offered to Cooper Alloy Corporation and Stainless Engineering and Machine Works on or about November 6, 1958. * * * Competition in the sale of fuel oil at all levels, including to consumers such as Cooper Alloy Corporation and Stainless Engineering and Machine Works, is very vigorous. Major competitors of the company in the New Jersey area include Gulf Oil Corporation, Texaco, Cities Service, Sinclair, Socony Mobil, Hess and Hartol. In addition, there are a number of distributors and jobbers who buy in cargo or barge quantities, the posted prices of which are lower than the posted tank transport and tank wagon prices due to the larger amounts involved, and these distributors and jobbers are thus able to resell in tank wagon and transport quantities in competition with Esso." This affiant adds that Esso's price to Cooper-Stainless was established as a result of Esso's successful effort to meet the prices of the above named competitors.

"Summary judgments are as applicable to actions under the Sherman Act as they are to any other type of actions, legal or equitable." United States v. Krasnov, D.C.Pa.1956, 143 F.Supp. 184, 197, affirmed 1957, 355 U.S. 5, 78 S.Ct. 34, 2 L.Ed.2d 21; Associated Press v. United States, 1945, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013. "Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Sartor v. Arkansas Natural Gas Corp., 1944, 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967.

In deciding the present motion, I am called upon to determine *not what* the facts are, but *whether there is a genuine issue of fact* material to the plaintiff's right to judgment. I can find no such issue, but am confronted merely with allegations in the language of the statutory sections, and conclusions therefrom, weakly bolstered by the expression of a hope that by some subsequent discovery means an issue of fact may be created,

although the period for discovery had expired when this motion was argued.

Finding no genuine issue of fact, I am impelled to the conclusion that the defendant is entitled to judgment as a matter of law, and an order therefor may be presented.