John TAXIN and Bernard Taxin, trading as John Taxin Co., Appellants,

v.

FOOD FAIR STORES, INC., Samuel P. Mandell Co., Inc., World Wide Produce Co., Inc., Mandell Distributing Co., Inc., M. G. S. Marketing Co., Inc., M. G. S. Tomato Distributors, Inc., Israel Klein Co., Inc., Klein Packing Co., Inc., Imperial Vegetable Co., Inc., Garden Fresh Vegetable Packing Co., Inc., Twin Packing Co., Inc., Delaware Valley Fruit Distributing Co., Inc., J. & B. Produce Co., Inc., Samuel P. Mandell, Arthur Rosenberg, Louis Stein, Myer Marcus, George Friedland and Samuel Friedland, Appellees.

No. 13218.

United States Court of Appeals Third Circuit.

Argued Nov. 28, 1960.

Decided Feb. 20, 1961.

Rehearing Denied March 14, 1961.

Lester J. Schaffer, Philadelphia, Pa. for appellants.

Harold E. Kohn, Philadelphia, Pa. (Aaron M. Fine, Dilworth, Paxson, Kalish, Kohn & Dilks, Philadelphia, Pa., on the brief), for appellees.

Before McLAUGHLIN, HASTIE, and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

In this civil antitrust suit the appellants, John and Bernard Taxin, who are wholesale distributors of fruit and produce in the Philadelphia area, have charged numerous defendants with conspiracy to restrain and monopolize interstate commerce in fruit and produce. One group of defendants, associated with defendant Food Fair Stores, Inc., will be called Food Fair or the Food Fair defendants. The second group, the appellees here, associated with defendant Samuel P. Mandell Co., Inc., will be called Mandell or the Mandell defendants.

Answering the complaint, all of the defendants pleaded a general release wherein the Taxins, for a consideration of $18,000 paid in cash to their counsel, released the defendants from liability for all claims under the antitrust laws or otherwise which the Taxins might have had against them on or before March 28, 1958, the date of the release. Replying to this affirmative defense, the appellants admitted the execution of the release but pleaded that it had resulted from Food Fair's promise to buy produce from the appellants in the future, and that this promise had been made in bad faith with a view to furthering the conspiracy to restrain trade.

The district court agreed to try the question of the validity of the release separately before considering any other issue. Accordingly, various depositions and affidavits were filed with reference to this question. The Mandell defendants then filed a motion for summary judgment asserting that, on the pleadings and the facts established and not disputed in the record, the release was valid as to them no matter what grounds of avoidance might be said to exist as against the Food Fair defendants. The court sustained this contention and granted summary judgment in favor of the Mandell defendants. From that partial disposition of the litigation this court has allowed an immediate appeal as authorized by Section 1292(b) of Title 28 U.S.C.

It is clear and not disputed that the release was intended and on its face is sufficient to bar the appellants from maintaining the present suit insofar as it

pertains to injuries occurring before March 28, 1958. It is also conceded that $18,000 was paid to counsel for the appellants as consideration for the release. This sum, of which $12,000 was paid by Mandell, was used to satisfy the Taxins' obligations to their counsel.

■ To avoid the release appellants assert that they were induced to execute the instrument by a promise made in bad faith that Food Fair Stores, Inc., would buy $500,000 worth of fruit and produce from them annually. Affidavits of appellant John Taxin and his attorney William A. Gray, Esquire, state that Louis Stein, Myer Marcus, and Arthur Rosenberg, described as "the principals of Food Fair Stores", were the parties who made or were present at the making of the alleged fraudulent promise. For present purposes we assume, but do not decide, that there is a substantial controversy yet to be litigated between appellants and the Food Fair defendants whether or not those defendants made a fraudulent promise in order to obtain a release. Cf. Michael Rose Productions, Inc. v. Loew's, Inc., D.C.S.D.N.Y.1956, 141 F.Supp. 257; 143 F.Supp. 606. But the affidavits and allegations which support the claim of fraud do not charge that the Mandell defendants participated in or even knew of the alleged misrepresentation. Indeed, appellant Bernard Taxin has deposed that Mr. Mandell "had nothing to do with" the negotiations during which the fraudulent promise is said to have been made.

The exculpation of the Mandell defendants was one important basis of the district court's conclusion that the release was valid as to these parties. In analogous circumstances the Court of Appeals for the Second Circuit has suggested that it would be inequitable to deny one antitrust defendant the benefit of a settlement and release solely because of fraud, unknown to him, on the part of another defendant in connection with such settlement and release. Martina Theatre Corp. v. Schine Chain Theatres, Inc., 2 Cir., 1960, 278 F.2d 798, 802. This is in accord with the rule of Section 477

of the Contracts Restatement, which reads as follows:

"Fraud or material misrepresentation by a third person renders a transaction voidable by a party induced thereby to enter into it if the other party thereto

"(a) has reason to know of the fraud or misrepresentation before he has given or promised in good faith something of value in the transaction or changed his position materially by reason of the transaction, or

"(b) is affected by the fraud or misrepresentation under the law of Agency or of Trusts."

For an application of that section of the Restatement by this court see Blum v. William Goldman Theatres, Inc., 3 Cir., 1947, 164 F.2d 192.

Despite the admission that the Mandell defendants "had nothing to do with" the alleged fraudulent promise, appellants have sought to imply some privity from the fact that Mandell paid $12,000 of the $18,000 cash consideration for the release and the additional fact that some months thereafter Samuel P. Mandell, a dominant personality among the Mandell defendants, became a vice-president of Food Fairs Stores, Inc. No more need be said of these circumstances than that in our view they have no tendency to prove guilty participation in or even knowledge of the alleged fraud by any of the Mandell defendants. Indeed, the giving of a substantial independent cash consideration for the release supports the claim that the release is valid. Cf. Talmadge v. United States Shipping Board Merchant Fleet Corp., 2 Cir., 1933, 66 F.2d 773, certiorari denied 1934, 291 U.S. 669, 54 S.Ct. 454, 78 L.Ed. 1058. This fact combined with the blamelessness of these defendants in the making of the alleged fraudulent promise would normally suffice to establish the validity of their release. Cf. Martina Theatre Corp. v. Schine Chain Theatres, Inc., supra.

In this case, however, we must deal with one more point which the appellants

have greatly stressed. In their reply to the affirmative plea of release they have asserted that "the alleged release was obtained by defendants as part of and in furtherance of the continuing conspiracy among the defendants about which plaintiffs complain". This in itself is said to preclude summary judgment. However, this allegation must be interpreted and considered in the light of Bernard Taxin's deposition which concedes that the Mandell defendants had nothing to do with alleged fraudulent representation by the Food Fair defendants. In these circumstances, it seems to be appellants' theory, and indeed it is so stated in their brief, that if the original conspiracy of Food Fair and Mandell to restrain trade can be proved, "Mandell would be responsible for the acts of his co-conspirators [in connection with the release] whether or not he participated therein". The court below properly pointed out that this "would mean that in any case in which a group of conspirators were involved in an antitrust case none could obtain a valid, binding release if one of the conspirators obtained a release by fraud".

 In our view the fatal defect in appellants' argument lies in its failure to respect the limits within which the law confines the responsibility of a conspirator for acts of a coconspirator. The accepted and prevailing rule has been clearly stated by District Judge Wyzanski in Momand v. Universal Film Exchange, D.C.D.Mass.1947, 72 F.Supp. 469, 475, affirmed 1 Cir., 1948, 172 F.2d 37, certiorari denied 1949, 336 U.S. 967, 69 S. Ct. 939, 93 L.Ed. 1118: "Conspirators are chargeable with the acts of their fellows only if the acts are done in the furtherance of the joint venture as all understood it; they are not to be held for what some of the conspirators, unknown to the rest, do beyond the reasonable intendment of the common understanding." Here, though plaintiffs have undertaken to file affidavits concerning the relation of the various defendants to the alleged fraudulent release, they do not assert or offer to prove that the original conspiracy to restrain trade included any agreement or common understanding that persons who might complain of the hurtful consequences of the conspiracy would be mollified by bad faith promises of future benefits. If the appellants were relying on their ability to prove such agreement, certainly the motion for summary judgment should have prompted them to say so. We are more inclined to require such an explanation because we are not able to imagine any meaningful way in which the obtaining of a release could be, in appellants' own words, "part of and in furtherance of the continuing conspiracy among the defendants about which plaintiffs complain". In simple logic a release given on March 28, 1958, could not facilitate any restraint of trade which had already been accomplished. If, on the other hand, plaintiffs mean that a release might further the conspiracy after its execution, this argument has no significance here because the release in suit clearly does not bar a suit for damages occurring after March 28, 1958, and the court's order granting summary judgment was limited accordingly. Thus, we cannot see how the release could have any effect except to compromise existing claims for past misconduct.[1]

In such circumstances, we hold that it was at least incumbent upon plaintiffs, in opposing the motion for summary judgment, to state any special or unusual relation which the release may have borne to the general conspiracy. Since nothing of that sort appears in the affidavits or

---

1. This reasoning also disposes of a suggestion, which seems to be implicit in appellants' brief, that Mandell's complicity in fact in the Food Fair misrepresentation can be inferred from the general conspiracy in restraint of trade to which Mandell is said to have been party. In our view, this would require sheer speculation rather than the drawing of a logical inference. It would, therefore, have been improper for the district court to have permitted a jury to reach such a conclusion.

was even suggested during the discussion of this point on oral argument, plaintiffs' unexplained and unsupported allegation that the obtaining of the release was part of or in furtherance of the original conspiracy does not suffice to prevent the granting of summary judgment.

For these reasons the judgment of the district court will be affirmed.