Pasquale **FIUMARA**

v.

**TEXACO INC., Humble Oil & Refining Company, Gulf Oil Corporation, Sinclair Refining Company and Associated Petroleum Industries of Pennsylvania.**

**Civ. A. No. 29671.**

United States District Court
E. D. Pennsylvania.

Jan. 16, 1962.

Order Sur Motion of Defendant Association to Amend Judgment or for Summary Judgment March 26, 1962.

Memorandum Opinion and Order Sur Defendant Oil Companies' Consolidated Motions May 4, 1962.

A. E. Hurshman, Philadelphia, Pa., for plaintiff.

Henry T. Reath, Miles W. Kirkpatrick, Roy D. Jackson, Jr., Robert W. Sayre, White & Williams, and John T. Clary, Philadelphia, Pa., for defendants.

Opinion and Order Sur Defendants' Consolidated Motions (Document No. 14)

VAN DUSEN, District Judge.

This case, which alleges a conspiracy in violation of the Federal antitrust laws, has been brought under 15 U.S.C.A. §§ 1, 2, 5, 12, 14, 15, 26 and 45. It is presently before the court on defendants' Consolidated Motions To Dismiss under F.R.Civ. P. rule 12(b), 28 U.S.C.A. or for Summary Judgment under F.R.Civ.P. rule 56 (Document No. 14).

Defendant Sinclair, which is in the business of manufacturing, refining and selling petroleum products, including gas-oline, notified all its dealers in the Philadelphia area to sell their gasoline at certain demanded retail minimum resale prices as of November 3, 1958. Plaintiff, one of the Sinclair dealers, did not sell at the stated prices and defendant Sinclair, on January 22, 1959, filed a Complaint in a Court of Common Pleas, Philadelphia County (C.P. 5, Dec. Term 1958, No. 1988), asking for an injunction against defendant's selling gasoline for less than the dealer minimum resale prices. A preliminary injunction was issued on February 9, 1959, and a permanent injunction issued on March 28, 1960. No violation of the antitrust laws was alleged in the Answer filed in the above-mentioned state court proceeding (see 15a–17a of Record in the Supreme Court of Pennsylvania, docketed as No. 23 in the Clerk's file).

Plaintiff appealed the case to the Pennsylvania Supreme Court, which dissolved the injunction on November 29, 1960,[1] and remanded the case to the Common Pleas Court for a further hearing. On March 7, 1961, the time scheduled for the further hearing, Sinclair asked that the proceedings be dismissed, which request was granted.

The instant action for injunctive relief and for treble damages alleges that defendants conspired to violate the antitrust laws and that plaintiff was injured thereby. The injuries, or damages, are set forth as follows in the original Complaint:

I. Plaintiff alleges that his total sales decreased during the period the state court injunction was in effect and claims damages in the amount of $15,950.00 for loss of profits during that time (par. 22 of Document No. 1).

II. He also claims $2,500. additional damages, representing the cost

---

1. While the appeal was pending, the Pennsylvania Supreme Court decided Gulf Oil Corp. v. Mays, 401 Pa. 413, 164 A.2d 656 (1960), in which it stated for the first time that a gasoline producer who seeks enforcement of a fair trade policy must affirmatively prove that it is not a party to a price-fixing agreement with its competitors and that it is not competing with its customers. The defendant in the Gulf case had not raised either point in its defense and admitted in his answer that Gulf was in free and open competition with its competitors.

of his being represented by counsel in the state court injunction proceedings (see par. 23 of Document No. 1).

III. On June 1, 1961, Sinclair terminated its contract with plaintiff and plaintiff claims he will suffer an irreparable loss, such as loss of his goodwill, loss of customers, and loss of future earnings from the sale of defendant Sinclair's products. This loss is valued at $20,000.00 (see par. 24 of Document No. 1).

### I—"Damnum Absque Injuria"

■ Defendants' first contention is that the Complaint should be dismissed for failure to state a claim on which relief can be granted.[2] Their position is that the injury claimed which relates to all defendants[3] is based on the injunction issued in Sinclair's fair trade enforcement suit and that any such injury was not proximately caused by defendants' alleged antitrust violation, which was not raised as a defense in that case, but by an injunction issued by a court of competent jurisdiction and as such is *damnum absque injuria.*

■ Private antitrust actions are founded upon injuries that would proximately or directly result from the commission of the act in violation of the antitrust laws[4] and recovery and damages under those laws are available only to those who have been directly or proximately injured by the claimed violation and are withheld from those who seek the windfall of treble damages because of incidental harm.[5] Injuries resulting from compliance with an injunction, even if improperly obtained, cannot support a recovery in a private antitrust suit.[6] There is no claim that the court which issued the injunction was not a court of competent jurisdiction, nor that the court had no right to grant the injunction (see Document No. 21, p. 9). Even if Sinclair's motives in bringing the suit were improper, plaintiff's remedy is not one for triple damages against these defendants for any injury in loss of business due to compliance with the injunction.[7]

---

2. This motion has been treated like a Motion for Summary Judgment, since matters outside the pleading have been presented to the court. See F.R.Civ.P. rule 12(b).

3. Defendants state that the Complaint really contains two counts—one relating to the injunction suit and one relating to the lease termination. They claim that only the first concerns any defendant except Sinclair. Plaintiff and his counsel have stated on the record that the lease termination allegation concerns only Sinclair (see Document No. 15, p. 20), but have changed this in the Amended Complaint (Document No. 19).

4. Story Parchment Company v. Paterson Parchment Paper Co., 282 U.S. 555, 566, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

5. Gomberg v. Midvale Company, 157 F. Supp. 132, 142 (E.D.Pa.1955). See, also, the statutory language of §§ 4 & 16 of the Clayton Act (15 U.S.C.A. §§ 15 & 26) and the cases cited by defendants in their brief (Document No. 20, p. 7, fn. 10).

6. In Campbell Soup Co. v. Martin, 202 F. 2d 398 (3rd Cir. 1953), an action for damages for complying with an injunction, the court held that the case was

moot since there were now no contractual relations between the parties and stated, at p. 399:

"There is no such thing as a cause of action for damages incurred as a result of compliance with an injunction. The only recourse seems to be a suit on a bond given by the party procuring the injunction."

The United States Court of Appeals for the Third Circuit has also stated, by way of dicta, that if no bond is given by the party procuring the injunction and a case of malicious prosecution has not been made out, nothing would have been recoverable for damages resulting from the issuance thereof, since these damages would have been attributable wholly to the judgment of a competent court and, therefore, *damnum absque injuria.* Cimiotti Unhairing Co. v. American Fur Refining Co., 168 F. 529, 531 (3rd Cir. 1909). See Lawrence v. St. Louis-San Francisco Ry. Co., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282 (1929); Meyers v. Block, 120 U.S. 206, 211, 7 S.Ct. 525, 30 L.Ed. 642 (1887).

7. An action for malicious prosecution against Sinclair alone has already been initiated by plaintiff in the state court (C.P. #7, March Term 1961, No. 1022; see Exhibit 6 to Document No. 15).

Therefore, although the case will not be dismissed for the reasons stated at pages 7–14 below, partial summary judgment will be granted as to the damages alleged in paragraph 22 of Document No. 1. That paragraph does not allege injury or damage directly or proximately caused by a violation of the antitrust laws, as is required under 15 U.S.C.A. § 15, supra, in order to recover treble damages.

■ Paragraph 23 of the Complaint alleges damages of $2,500.00, the cost in legal fees incurred by plaintiff in defending the injunction suit brought by Sinclair. This paragraph also must be dismissed as a result of partial summary judgment for the reasons set forth above. No reason has been given by the litigants which would persuade this court to rule that moneys expended in legal fees in defending a suit for a preliminary injunction and for appealing the decision of the lower court granting such injunction constituted injury to "business or property by reason of anything forbidden in the antitrust laws" which could be recovered in an independent suit, particularly when such alleged violation of the antitrust laws was not raised in defense of the state court injunction proceedings. Such expenses are not contemplated by the Clayton Act.

Partial summary judgment will be granted defendants insofar as the damages alleged in paragraphs 22 and 23 of the Complaint are concerned.

## II—Alleged Insufficiency of the Evidence to Support the Conspiracy Charge

Plaintiff has alleged that the defendants entered into a conspiracy in violation of the Sherman and Clayton Acts. It was alleged in the original Complaint that each of the four oil company defendants adopted fair trade programs and established similar fair trade minimum prices for gasoline during an 11-month period (see Document No. 1, pars. 14–17). From these undisputed facts, and from the fact that Sinclair brought an injunction suit against plaintiff to enforce its fair trade prices, plaintiff wants the fact finder to find that the defendants conspired to adopt their fair trade programs and that Sinclair brought suit against plaintiff pursuant to the claimed conspiracy.

■ Defendants contend that a trier of facts could not legally make the inferences demanded by plaintiff and that, therefore, his suit should be summarily dismissed. A fact finder cannot make a finding based on sheer speculation, rather than on the drawing of a logical inference. Taxin v. Food Fair Stores, Inc., 287 F.2d 448, 451 (3rd Cir.1961).

■ ■ Plaintiff has shown similarity in minimum fair trade prices set by the four oil company defendants,[8] but parallel business behavior itself does not constitute a Sherman Act offense. As the United States Supreme Court has said, " 'conscious parallelism' has not yet read conspiracy out of the Sherman Act entirely." Theatre Enterprises, Inc. v. Paramount Film Distributing Corp., 346 U.S. 537, 541, 74 S.Ct. 257, 98 L.Ed. 273 (1954). See, also, Delaware Valley Marine Supply Company v. American Tobacco Company, et al., 297 F.2d 199 (3rd Cir.), and cases therein cited. The original Complaint, the deposition of plaintiff and statement of plaintiff's counsel, which are on the record, might not be sufficient to prevent the grant of summary judgment[9] if the Complaint had not been

8. It has been repeatedly held that price uniformity alone in a commodity such as gasoline is not sufficient to support a finding of conspiracy. See Cement Mfgrs. Ass'n v. United States, 268 U.S. 588, 606, 45 S.Ct 586, 69 L.Ed. 1104 (1925); United States v. International Harvester Co., 274 U.S. 693, 708–709, 47 S.Ct. 748, 71 L.Ed. 1302 (1927); cf. Enterprise Industries v. Texas Company, 240 F.2d 457, 458 (2nd Cir. 1957), cert. den. 353 U.S. 965, 77 S.Ct. 1049, 1 L.Ed.2d 914 (1957), and other cases cited at pp. 16–23 of defendants' brief (Document No. 20).

9. Plaintiff's counsel also stated that he has no more information than what is in the pleading and deposition, but that he hopes to obtain some (Deposition of Fiumara,

amended, but this need not be, and is not, decided.

However, the Complaint, as amended, alleges facts which prevent the granting of the Motion For Summary Judgment as to defendants on the present record. In paragraph 26 of that document (Document No. 19), plaintiff has added allegations concerning other injunction suits brought by the oil company defendants against dealers violating the fair trade minimum prices. He alleges that these were all instituted in furtherance of the conspiracy and in pursuance of their "illegal fixing" of retail resale prices of their gasoline products. These alleged suits are similar to the allegations in the Complaint concerning Sinclair's suit against plaintiff. Although the allegations are vague and contain conclusions (i. e., "that these Defendants knew for a long time * * * that gasoline is a 'fungible product' which does not come under the Pennsylvania Fair Trade Act of June 5, 1935, * * *."),[10] they bring into the Complaint charges against the oil company defendants which allege parallel business behavior in at least two related matters.

Although defendants argue that there are no "facts" before this court from which a conspiracy can be found, that the plaintiff's proposal to prove the conspiracy at trial is not enough to defeat the Motion For Summary Judgment,[11] and that plaintiff has only alleged legal conclusions,[12] these arguments are not persuasive in the light of Bragen v. Hudson County News Company, 278 F.2d 615, 618 (3rd Cir.1960), and in view of the record, which contains allegations of conspiracy and violation of the anti-trust laws (see paragraphs 8, 20 and 25a of the Amended Complaint) that have not been denied by the oil company defendants by answer, affidavit, documentary evidence, or in any other method.[13]

Cases such as Delaware Valley Marine Supply Company v. American Tobacco Company et al., supra, and Gold Fuel

Document No. 15, pp. 16–23, and N. T. 76 of Document No. 25). In his letter of December 11 (which has been attached to plaintiff's brief, being Document No. 21), plaintiff's counsel lists specific suits which have been brought by defendant companies to enforce their prices. Assuming that such material can be considered in spite of its non-compliance with F.R.Civ.P. rule 56(e), defendants' letter of 12/26/61, which is attached to this opinion, points out that the Pennsylvania Fair Trade Act made it necessary for defendant oil companies to institute such suits if they were to avoid the defense provided for in § 8 of that Act (73 P.S. § 8).

10. It is noted that the Pennsylvania Supreme Court, as late as 1959, stated that a minimum price could be set for gasoline under this Pennsylvania Fair Trade Act. In Sinclair Refining Co. v. Schwartz, 398 Pa. 60, at page 63, 157 A.2d 63 (1959), the court said:

"We are told that gasoline has not yet been before our courts, and that appears to be so. There is no difficulty about accepting it within the protection of the Act, since Section 4 defines 'commodity' as 'any subject of commerce', and the subject of the Act is 'any commodity'."

Plaintiff is incorrect in assuming in his letter of 1/2/62 (attached to Document No. 22) that conclusions of law alleged in a Complaint are binding on anyone.

11. Proctor v. Sagamore Big Game Club, 265 F.2d 196 (3rd Cir. 1959).

12. Black & Yates, Inc. v. Mahogany Ass'n, 129 F.2d 227, 148 A.L.R. 841 (3rd Cir. 1942); Rossi v. McCloskey & Company, 149 F.Supp. 638, 640 (E.D.Pa.1957). The literal language at 231–232 of 129 F. 2d has apparently been qualified by later decisions such as Nagler v. Admiral Corp., 248 F.2d 319, 324–326 (2nd Cir. 1957).

13. The only defendant to answer the Complaint was Associated Petroleum Industries of Pennsylvania, which denied participation in a conspiracy among other things. Also, an affidavit has been filed by a representative of Associated Petroleum in support of its Motions. The only documents relied on by the other defendants are the pleadings, plaintiff's deposition (Document No. 15), and the admissions of plaintiff's counsel in the record. See, for example, pp. 1 and 2 of the attached letter of 10/19/61.

Service, Inc. v. Esso Standard Oil Company, 195 F.Supp. 85 (D.N.J.1961), relied on by defendants, are distinguishable because there was evidence of express denials of any agreement by the defendants in the records in those cases. In the Delaware Valley Marine Supply case, the court stated at page 203 of 297 F.2d: "* * * all the defendants have denied expressly the existence of any agreement." Again, at page 206, the court said: "Goldman emphasized the fact that the defendants did not place any responsible executives on the stand to rebut the allegation of conspiracy, [William Goldman Theatres, Inc. v. Loew's, Inc., 3 Cir.] 150 F.2d 738, at p. 743: there was no silence here." In the Gold Fuel case, the court points out at page 92 of 195 F.Supp.:

"Defendant's affidavits squarely deny the conclusory allegations which plaintiff predicates upon the alleged fact that the three bidding corporations submitted prices with which plaintiff could not compete.

* * * * * *

"As explained in the affidavit of Esso's New Jersey Division manager, * * * '* * * It would be against the policy of the company for any employee of the company to enter into any combination or agreement with any competitors fixing or relating to prices of its products, and specifically the company did not consult with, agree or combine with any of its competitors to fix the price of fuel oil which was offered to Cooper Alloy Corporation and Stainless Engineering and Machine Works on or about November 6, 1958. * * * Competition in the sale of fuel oil at all levels, including to consumers such as Cooper Alloy Corporation and Stainless Engineering and Machine Works is very vigorous. * * *'"

If affidavits or other documentary material had been filed by defendant oil companies, it might well be that a motion for summary judgment could be granted. See Taxin v. Food Fair Stores, Inc., supra; United States for the Use of Kolton v. Halpern, 260 F.2d 590 (3rd Cir.1958); United States v. Krasnov, 143 F.Supp. 184 (E.D.Pa.1956), aff'd. 355 U.S. 5, 78 S.Ct. 34, 2 L.Ed.2d 21 (1957), rehearing den. 355 U.S. 908, 78 S.Ct. 328, 2 L.Ed.2d 262 (1957); Gold Fuel Service, Inc. v. Esso Standard Oil Company, supra.[14] However, in view of the fact that the Amended Complaint alleges conspiracy, parallelism in pricing, injunctive suits by defendant oil companies against their dealers brought as part of the conspiracy to fix prices illegally, lease termination in furtherance of the conspiracy, among other things, and there is no affirmative evidence of the non-existence of the conspiracy, summary judgment may not be granted on the claim contained in paragraphs 24–26 of the Complaint at this time in favor of defendant oil companies on the present record. Cf. Dovberg v. Dow Chemical Company, 195 F.Supp. 337 (E.D.Pa.1961).

It is a very difficult decision to determine whether summary judgment should be granted in favor of defendant Associated Petroleum Industries of Pennsylvania. The Complaint alleges on information and belief that the defendant is an organization whose membership includes the other defendants and others who are manufacturers, refiners and producers engaged in the selling of petroleum products in interstate commerce. Associated's affidavit (Document No. 26) states that it is a non-profit association created to represent all segments of the petroleum industry in Pennsylvania in governmental and public relations activities and that it never engaged in the production, refining, distribution or sale of petroleum products. Although the An-

14. Cases such as Schwegmann Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 1035 (1951), and Esso Standard Oil Company v. Secatore's Inc., 246 F.2d 17 (1st Cir. 1957), relied on by plaintiff, are clearly distinguishable from the situation presented by this record. There is nothing in the record to show that Sinclair is a retailer or is in competition with plaintiff.

swer states that Associated had no participation in any of the transactions alleged in the Complaint to have occurred, nor did it enter into any agreement or understanding with any of the other defendants with respect to any of the matters set forth in the Complaint, the affidavit does not so state.

The reasons which were given above for denying the Motion For Summary Judgment to the defendant oil companies would not be applicable to defendant Associated if the affidavit had contained the material in the foregoing sentence. This organization, which is not a "competitor" of any other litigant, has been charged here with entering into a conspiracy with the other defendants. No facts have been alleged which would make this defendant liable under the anti-trust laws. See Maple Flooring Mfgrs. Ass'n v. United States, 268 U.S. 563, 584, 45 S.Ct. 578, 69 L.Ed. 1093 (1925). There is nothing set forth in either the original Complaint nor the Amended Complaint on which an inference could be drawn that this defendant was a member of the alleged conspiracy. See Delaware Valley Marine Supply Company case, supra. Certain exhibits which have been attached to plaintiff's brief (Document No. 21) do not change this decision. First of all, the Amended Complaint did not make any allegations concerning the subject matter of those exhibits. Secondly, even if Associated were responsible for the

introduction of House Bill No. 617 in the Pennsylvania General Assembly (Exhibit B to Document No. 21), this would not raise any inference of participation in an illegal act in violation of the anti-trust laws. See Eastern R. R. Presidents Conference v. Noeer Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961).[15]

By alleging in the Amended Complaint that this non-profit organization entered into a "conspiracy" with some of its members and then setting forth no facts on which this allegation is based, even after a denial has been made by Answer and Motions For Summary Judgment and For Dismissal have been filed, plaintiff would not have prevented the Motion For Summary Judgment as to this defendant if the affidavit (Document No. 26) had contained the allegations of the Answer. Under such circumstances, the allegations are statements of legal conclusions[16] and there is no genuine dispute as to material facts on the record which would prevent the granting of the Motion For Summary Judgment as to defendant Associated Petroleum Industries of Pennsylvania.[17] See Taxin v. Food Fair Stores, Inc., supra.

On this record, Associated's Motion will have to be denied, but it may file a Motion to Amend Section 1 of the attached order under F.R.Civ.P. rule 59 and support it by an appropriate affidavit if it cares to do so.

15. It is also noted that plaintiff's counsel in his brief does not consistently allege that the Bill introduced in the Pennsylvania General Assembly, a copy of which is attached to his brief as Exhibit B, is exactly like the Act declared unconstitutional in Gambone v. Commonwealth, 375 Pa. 547, 101 A.2d 634 (1954), but just states that it was "along these same lines" (see p. 13 of Document No. 21). Although, on the same page of the brief, the Acts are referred to as "identical," a comparison of the Acts shows that there are differences in their wording. The former Act is set forth as Exhibit A to plaintiff's brief (Document No. 21). As for the allegation that Associated had any connection with the 1959 Bill, plain-

tiff's counsel, at p. 13 of his brief, says merely: "Who else but Defendants could be responsible for the submission of this House Bill No. 617?"

16. See Black & Yates, Inc. v. Mahogany Ass'n, supra, and Rossi v. McCloskey & Company, supra.

17. In deciding these Motions, it has been assumed that the answer to plaintiff's interrogatory No. 1 is "yes" and that the oil company defendants named in that interrogatory have been members of Associated since prior to 1951, when the first Act of the Pennsylvania General Assembly referred to by plaintiff was enacted (see Document No. 13).

### III—Claim for Damages Resulting From Termination of Plaintiff's Lease

Paragraph 25 of the original Complaint concerns the termination of plaintiff's lease by Sinclair. It has been argued by Sinclair that this portion of the Complaint should be dismissed as not stating a cause of action under the anti-trust laws. See Green v. Victor Talking Mach. Co., 24 F.2d 378, 382, 59 A.L.R. 1091 (2nd Cir.1928), cert. den. 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928). Cf. Note: "Proving Injury To Competition in Private Anti-Trust Suits Provoked by Concerted Refusals to Deal," 68 Yale L.J. 949. The other defendants argued that this allegation did not refer to them at all.

Unilateral action in selecting customers is permitted by United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). It is proper, therefore, to announce a policy (e. g., minimum pricing) and then decline to have further dealings with retailers who failed to abide by it, but it is not proper to do more than this. See United States v. Parke, Davis & Co., 362 U.S. 29, 43, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960). Unilateral refusal to deal always is permissible except where actual monopoly or intent to monopolize exists.[18] Alexander v. Texas Co., 149 F.Supp. 37, 43 (W.D. La.1957). Such unilateral refusal to deal is not per se a violation of Section 1 of the Sherman Act nor a violation of Section 2 thereof, unless actual monopoly or specific intent to monopolize has been properly pleaded and proved. Delaware Valley Marine Supply Company case, supra; Alexander v. Texas Company, 165 F.Supp. 53, 62–63 (W.D.La.1958).

The Complaint, as it originally read, did not connect the lease termination with the anti-trust violation allegation.

Paragraph 25 did not allege that the cancellation was directly or indirectly involved in the alleged conspiracy, nor did it even mention the other defendants. However, paragraphs 25a and 25b of the Amended Complaint change the record by adding allegations which implicate the other defendants and charge that the lease termination was part of the alleged conspiracy.[19] For the reasons stated under II above, the present record does not permit the entry of judgment for the oil company defendants on this claim.[20]

Unless some or all of the parties apply for the certification contemplated by 28 U.S.C.A. § 1292(b) within ten days, a pre-trial conference will be scheduled as soon as the defendant oil companies file Answers to the Complaint, as such Answers may disclose that it is possible to supplement the record to the extent that renewed Motions For Summary Judgment are feasible. Meanwhile, plaintiff should proceed promptly with his interrogatories (see letter of December 11) and any other discovery he wishes.

### ORDER

AND NOW, January 16, 1962, IT IS ORDERED that:

(1) the Motion For Summary Judgment of defendant Associated Petroleum Industries of Pennsylvania (Document No. 14) is granted in part and paragraphs 22 and 23 of the Complaint are dismissed;

(2) the Motions for Summary Judgment of defendants Sinclair, Gulf, Texaco and Humble (Document No. 14) are granted in part and paragraphs 22 and 23 of the Complaint are dismissed; and

(3) in all other respects, defendants' consolidated motions (Document No. 14) are denied.

---

18. As recently as Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 212, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959), the court has stated in dicta that a single trader may refuse to deal with another, citing the Colgate case, supra.

19. It also alleges that the lease termination was against the self-interest of the defendant Sinclair.

20. There are attached to this opinion the letters of defendants dated October 12, 1961 (with enclosure, being Indictment in Criminal 2199, N.D.Ind.), October 19, October 31, and December 26, 1961.

## SUR MOTION OF DEFENDANT ASSOCIATION TO AMEND JUDGMENT OR FOR SUMMARY JUDGMENT [1] (Document No. 29)

AND NOW, March 26, 1962, after consideration of the above Motion [1] (Document No. 29), the affidavit attached to that Motion, the briefs of plaintiff and defendant Association (Documents Nos. 49 and 50), the record and oral argument, IT IS ORDERED that the above Motion For Summary Judgment is granted and judgment shall be entered in favor of Associated Petroleum Industries of Pennsylvania, defendant, and against Pasquale Fiumara, plaintiff, with costs.

In the opinion sur defendants' consolidated motions (Document No. 27), it was stated that if defendant Associated had filed an affidavit stating that Associated had no participation in any of the transactions alleged in the Complaint to have occurred, and had not entered into any agreement or understanding with any of the other defendants with respect to any of the matters set forth in the Complaint, a Motion for Summary Judgment would have been granted Associated. An affidavit has now been filed [2] which sets forth such denials.

For the reasons stated in the opinion of January 16, 1962 (Document No. 27), defendant Associated is now entitled to summary judgment.

## SUR DEFENDANT OIL COMPANIES' CONSOLIDATED MOTIONS
(Document No. 41)

This case, in which the Amended Complaint alleges a conspiracy in violation of the Federal antitrust laws, is presently before the court on defendants' Motion To Amend the court's Order of January 16, 1962 (Document No. 27), and their Renewed Motion For Summary Judgment (see Document No. 41).

The Opinion of January 16, 1962 (Document No. 27), sets forth the pertinent facts. In the Order of the same date, the defendants' Motion For Summary Judgment was granted in part and denied in part.[1] Subsequent to that Order, the defendants filed Answers to the Complaint (Documents Nos. 30, 36, 40 and 43), the instant Motions (Document No. 41), and affidavits in support of said Motions (Documents Nos. 31, 33, 37, 39, 42 and 61–64).

 The undersigned recognizes that it is most unusual to dismiss a Complaint on a Motion For Summary Judgment, but this is one of few exceptional cases where the record requires it.

 At the time of the Opinion and Order of January 16, 1962 (Document No. 27), the court had before it allegations that the defendants conspired to adopt fair trade programs, that Sinclair brought an injunction suit against plaintiff pursuant to the claimed conspiracy, and that the other defendants instituted suits against their dealers who violated the fair trade minimum prices in furtherance of the conspiracy and in pursuance of "illegal fixing of retail resale prices of their gasoline products." Although the allegations were vague and contained conclusions, the Motion For Summary Judgment was not granted, partly because the allegations were not denied by the defendants by answer, affidavit, documentary evidence, or in any other method. The court stated at page 10 of its Opinion:

"If affidavits or other documentary material had been filed by defendant oil companies, it might well be

---

1. At the argument on the above Motion held March 22, 1962, Associated amended the above Motion so that it was made alternatively as a Motion For Summary Judgment. See notes of Official Court Reporter.

2. The affidavit is attached to Document No. 29.

---

1. The Motion was granted insofar as it related to damages allegedly caused by the compliance with a preliminary injunction against plaintiff by a court of competent jurisdiction. The damages claimed covered a period which did not exceed the time the injunction was in effect (see par. 22 of Document No. 1); hence, the decision in DiGaetano v. Texas Company, 3rd Cir., 300 F.2d 895, is distinguishable.

that a motion for summary judgment could be granted. (Citing cases.) "

Subsequently, the defendants filed complete Answers, denying the allegations contained in the Amended Complaint.[2] Also, each oil company defendant filed an affidavit,[3] taken by a competent executive of the company, which squarely denies the above-mentioned conclusory allegations of plaintiff. These affidavits show that it was against the policy of each company to enter into any agreement with competitors relating to price fixing, that each company made its own decision to establish a minimum resale price schedule under the Pennsylvania Fair Trade Act, 73 P.S. § 7 et seq., and that the companies adopted the fair trade procedure at different times and not always at the same minimum price as had been set by the other oil companies.[4] The affidavits of defendants Humble, Gulf and Texaco also negate the conclusion of plaintiff that they had any knowledge of Sinclair's relations with Fiumara concerning the bringing of the injunction suit or the termination of the plaintiff's lease until the present suit was commenced. Defendants also filed affidavits (Documents Nos. 61–64) which show that they specifically excepted from their fair trade agreements sales to wholesalers of the type referred to in their answers (Documents Nos. 51–54) to plaintiff's Interrogatory No. 12 and which state the date on which they ceased fair trading in Pennsylvania.

The filing of these Answers and affidavits by defendants makes this case an appropriate one for the granting of summary judgment under the authority of Delaware Valley Marine Sup. Co. v. American Tobacco Co., 297 F.2d 199 (3rd Cir. 1961), cert. den. 82 S.Ct. 867 and Gold Fuel Service, Inc. v. Esso Standard Oil Company, 195 F.Supp. 85 (D.N.J. 1961); see, also, cases cited at page 10 of Opinion of January 16, 1962 (Document No. 27); Fortugno v. Trachtenberg and Community Memorial Hospital, D.C., 202 F.Supp. 177, Opinion of Chief Judge Clary dated 2/23/62, reported in Legal Intelligencer of 3/2/62; Kleiman v. Tidewater Mills & Elevator Co., et al., C.A. 22018, Opinion of Senior Judge Kirkpatrick dated 10/31/61, reported in Legal Intelligencer of 11/8/61.

Facts cannot be based on sheer speculation, rather than on the drawing of a logical inference. Taxin v. Food Fair Stores, Inc., 287 F.2d 448, 451 (3rd Cir. 1961). The vague, conclusionary allegations of the Amended Complaint, when considered with the documents filed by defendants, are insufficient to create a genuine dispute concerning a material fact and, hence, do not prevent the granting of defendants' Motion For Summary Judgment.[5]

The affidavit taken by plaintiff's attorney, which is attached to Document No. 45, attempts to incorporate by reference the testimony and opinion in the case of Esso Standard Oil Company v. Ciambrello, C. P. No. 1, Phila. Co., Sept. Term 1959, No. 3195. Without deciding whether such wholesale incorporation of the record in another case is proper, the parts of said record to which the court's attention has been specifically directed by letter of March 22, 1962, which has been attached to Document No. 45, have been examined and have been found not to negative the above-described affidavits and plaintiff's deposition, which require the granting of this Motion. Although the adjudication states that the circumstances of the case, when uncontradicted and with no more explanation than the record affords, justify the inference that Esso (now Humble) acted in con-

2. See Documents Nos. 30, 36, 40 and 43.

3. Sinclair filed two such affidavits (Documents Nos. 39 and 42). The affidavits of the other defendants are Documents Nos. 31, 33 and 37.

4. See, e. g., paragraph 4 of Document No. 33.

5. The cases cited in this and the foregoing paragraph show that the cases cited on pp. 2 and 4 of PLAINTIFF'S MEMORANDUM CONTRA DEFENDANTS' SUPPLEMENTAL AFFIDAVITS (Document No. 65) are inapplicable to this record.

cert and in common tacit agreement with the other major oil companies in the Philadelphia area in maintaining a uniform, horizontal price level for their regular brand gasolines, it also holds that price changing was done by Esso without discussion with its competitors (see Finding of Fact No. 13 and pages 20–21 of the court's adjudication). The affidavits recently filed by defendants (see, particularly, Documents Nos. 31, 33, 37, 39 and 42) are such as appear to have been contemplated by the Common Pleas Court on page 21 of its adjudication in Esso Standard Oil Company v. Ciambrello and make the record in this case different from that which was before the judge hearing that case.[6] Under such circumstances, the Ciambrello decision is not one which would raise a genuine issue of fact and prevent the granting of defendants' Motion For Summary Judgment. In Ciambrello, the court decided that the record sustained a finding that the oil company competed with its dealers. In the record of the instant case are found sworn answers to plaintiff's Interrogatory No. 12 which show that the defendants did not sell to public consumers whose records are public or quasi-public at a price less than

they charged their dealers during the time period applicable in this suit.[7] As stated above, affidavits setting forth the exemption from the fair trade agreements of sales to this type of wholesaler are part of the record.[8] These and other facts make the record here substantially different from that presented to the court in Ciambrello.

Looking at the record in this case in the light most favorable to plaintiff, as must be done,[9] it shows no genuine dispute as to a material fact. Defendants' Renewed Motion For Summary Judgment should be granted.

### ORDER

AND NOW, May 4, 1962, after consideration of the foregoing Motion, the briefs of counsel (Documents Nos. 50, 56 and 65), the letter of March 22, 1962, which has been attached to Document No. 50, oral argument, and the record, IT IS ORDERED that defendants' Renewed Motion For Summary Judgment (Document No. 41) is granted, and judgment is entered in favor of Texaco, Inc., Humble Oil & Refining Company, Gulf Oil Corporation, and Sinclair Refining Company, defendants, and against Pasquale Fiumara, plaintiff.

6. It is also noted that Esso excepted to the adjudication and then, before such exceptions were argued, cancelled its fair trade agreements. Since the exceptions had become moot, the court entered the Chancellor's Decree Nisi, dismissing Esso's Complaint, as the Final Decree.

7. See Documents Nos. 51–54. It is also noted that during almost all of the period (commencing May 31, 1961) covered by paragraph 24 of the Amended Complaint (Document No. 24) the defendants had abandoned (as of various dates in June 1961) use of their fair trade procedures (see Exhibit D to Document No. 21 and Documents Nos. 61–64), so that the issue of whether or not such procedures were in conformity with 15 U.S.C.A. §§ 1 and 45(a) (particularly the 1952 McGuire amendment found in 66 Stat. 632) is not pertinent under the portions of the Amended Complaint which were not dismissed by the Order of January 16, 1962 (Document No. 27).

8. See Documents Nos. 61–64. These documents make the holding in General Electric Company v. Hess Brothers, Inc., 155 F.Supp. 57, 62 (E.D.Pa.1957), applicable. The case now before the court does not present the record present in Esso Standard Oil Company v. Secatore's, Inc., 246 F.2d 17, 19–20 (1st Cir. 1957), cert. den. 355 U.S. 834, 78 S.Ct. 54, 2 L.Ed.2d 46 (1957), which was relied on in Gulf Oil Corp. v. Mays, 401 Pa. 413, 164 A.2d 656 (1960).

9. Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed. 2d 458 (1962). This case is distinguishable from the Poller case, in which the Supreme Court condemned "trial by affidavit," because of the lack of facts presented by plaintiff in his Amended Complaint, or elsewhere in the record, to controvert the clear factual picture presented by defendants through the deposition of plaintiff (Document No. 15), and Documents Nos. 31, 33, 37, 39, 42, 51–54 and 61–64. See cases cited at pages 3–4 above.