TEXACO, INC., Humble Oil & Refining Company, Sinclair Refining Company, and Gulf Oil Corporation

v.

Pasquale FIUMARA.

No. 35208.

United States District Court
E. D. Pennsylvania.

July 31, 1964.

Henry T. Reath, Miles W. Kirkpatrick, John T. Clary and Robert W. Sayre, Philadelphia, Pa., for plaintiffs.

A. E. Hurshman, Philadelphia, Pa., for defendant.

HIGGINBOTHAM, District Judge.

Plaintiffs request this Court to enjoin Pasquale Fiumara and his representatives from prosecuting any claim, cause of action, question or fact which was or could have been litigated in two prior actions decided by this Court. (Civil Action Nos. 29671, and 33296.)

Since "a motion for injunction pendente lite is addressed to the judicial discretion of the District Court," [1] it is necessary to note in some detail the unique facts and changes in law which have been considered in exercising my judicial discretion to at this stage deny the relief requested.

Plaintiffs are four major oil-gasoline companies doing substantial business in Pennsylvania and are incorporated in states other than Pennsylvania. Defendant, Pasquale Fiumara, operates a gasoline service station at 6008 Haverford Avenue, Philadelphia, Pennsylvania.

From 1949 to 1961, defendant, Pasquale Fiumara, had a franchise for the sale of Sinclair's gas and related products. He claims that by reason of "ten years of hard work" he was able to build up "a profitable business from the sale of 76,987 gallons of Sinclair gasoline in 1950, to 421,353 gallons of Sinclair gasoline sold in 1958 ".[2] He attributes this

---

1. See 7 Moore, Federal Practice § 65.04(2) at 1630 (2nd ed. 1955). See also Yakus v. United States, 321 U.S. 440, 441, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

2. Paragraph 22, Amended Complaint, Civil Action No. 29671.

prior success to his ability to sell gasoline from December 1949 to February 8, 1959 "at the prevailing prices in the free and equal market." [3]

On January 22, 1959, plaintiff-Sinclair filed a complaint in equity in Common Pleas Court No. 5, Philadelphia County, December Term, 1958, No. 1988, requesting a preliminary injunction against Fiumara by reason of his sale of Sinclair products at prices below Sinclair's established minimum resale prices. Sinclair obtained an injunction against plaintiff from advertising, offering for sale or selling directly or indirectly these products below Sinclair's designated minimum retail prices which are referred to as "fair trade prices." Fiumara had never executed any fair trade agreement with Sinclair.

On February 9, 1959, the Common Pleas Court entered a preliminary injunction and made it permanent on March 28, 1960. Fiumara appealed to the Pennsylvania Supreme Court which dissolved the injunction and ordered the record remanded to the Common Pleas Court for a further hearing so that both parties could introduce additional evidence. After there had been a date set for a further hearing in compliance with the Supreme Court's opinion, Sinclair "refused to proceed with the trial which * * * Sinclair of its own accord * * had initiated and instead asked the Common Pleas Court to dismiss the proceedings." [4] Dismissal was granted.

On May 25, 1961, Fiumara filed an antitrust suit seeking treble damages for an alleged conspiracy to fix prices of gasoline at retail in the Philadelphia area against the present plaintiffs: Sinclair Refining Co., Texaco, Inc., Humble Oil & Refining Co., Gulf Oil Corporation and also Associated Petroleum Industries of Pennsylvania.

On January 16, 1962, Judge Van Dusen granted summary judgment as to Associated Petroleum Industries of Pennsylvania, and on May 4, 1962, granted a motion for summary judgment in favor of the other defendants. (204 F.Supp. 544 (E.D.Pa.1962).)

On December 20, 1962, the Court of Appeals affirmed *per curiam* Judge Van Dusen's decision, 310 F.2d 737 (3rd Cir. 1962), and the United States Supreme Court denied Fiumara's petition for a writ of certiorari. (372 U.S. 976, 83 S. Ct. 1109, 10 L.Ed.2d 142 (1963).)

On July 11, 1963, Fiumara filed a complaint in the Court of Common Pleas for Philadelphia County against the present plaintiff corporations and sought damages for violation of "Pennsylvania and Federal Law" for a "conspiracy to fix retail gasoline prices." (Paragraph 46, Plaintiffs' Complaint.) By reason of the request of the instant plaintiff-corporations, the case was remanded to this Court as Civil Action No. 33296. On December 17, 1963, Judge Van Dusen granted the gasoline companies' motion for summary judgment from which no appeal was taken.

Plaintiffs claim that the instant action was filed because of a "threat" of counsel for Fiumara "to institute a third action on the same unfounded claims, this time in the Courts of the Commonwealth of Pennsylvania, unless he is paid a substantial sum of money by these plaintiffs." (Paragraph 5, Plaintiffs' Complaint.) This alleged threat was contained in a letter written by A. E. Hurshman, counsel for Fiumara, on February 25, 1964, in which he indicated various legal theories upon which he thought the oil companies may be liable, and in which he suggested an "amicable" adjustment so that the oil companies would not become involved in "innumerable lawsuits, similar to the General Electric cases now in the Federal Court." (Plaintiffs' Exhibit No. 1).

## I.

Although a federal court has the requisite power to secure and preserve for parties the fruits of their prior judg-

---

3. Paragraph 9, Amended Complaint, Civil Action No. 29671.

4. Paragraph 13, Amended Complaint.

ment[5], I must note, however, that plaintiffs are seeking a highly unusual remedy in the instant case. In the event that the anticipated litigation occurs, plaintiffs prefer the severity of having the burden placed on Fiumara to show cause why a contempt citation should not issue against him for violating the injunction, rather than having to raise the defense of res judicata or collateral estoppel themselves. The rareness of the invocation of the type of injunctive remedy sought was demonstrated by plaintiffs' admission at oral argument that at that time they had found no instances where such powers have been sought or granted in this Circuit.[6]

■■ In addition to the customary restraint required in issuing injunctive relief, in my view, the courts should exercise even greater restraint in issuing injunctions against the "relitigation" of issues which were or "could have been litigated" in prior cases.[7] Often a prohibition against relitigation is necessarily based on a plethora of variables which sometimes cannot be determined with the precision of a prohibition against specific physical acts. As an example, the prohibition against filing claims which "could have been litigated" is not as certain a guide as is the prohibition that one must not picket in front of

store X or must not sell stock Y. Yet even if plaintiffs extraordinary request should not be scrutinized with the greater caution suggested, plaintiffs have still failed to establish the right to relief within normal equitable standards.

Recent decisions by both the Pennsylvania Supreme Court and the United States Supreme Court raise additional grounds for caution in issuing an injunction against anticipated "relitigation". In his opinion of May 4, 1964, Judge Van Dusen noted that:

" * * * it is most unusual to dismiss a Complaint on a Motion For Summary Judgment, but this is one of few exceptional cases where the record requires it." (204 F.Supp. at 544, 553.)

In the case before Judge Van Dusen, the record consisted of, among other things, "affidavits [which] show that it was against the policy of each company to enter into any agreement with competitors relating to price fixing, that each company made its own decision to establish a *minimum retail price schedule under the Pennsylvania Fair Trade Act,* 73 P.S. § 7 et seq., and that the companies adopted the fair trade procedure at different times and not always at the same minimum price as had been set by the other

---

5. See Berman v. Denver Tramway Corp., 197 F.2d 946 (10th Cir. 1952).

6. Since that time, plaintiffs' counsel cited by letter two cases: Craft v. Lathrop, 6 Fed.Cas. 702, No. 3318 (C.C.E.D.Pa. 1851), and General Ry. Signal Co. v. Union Simplex Train Control Co., 106 F. 2d 1018 (3rd Cir. 1939), affirming per curiam, 26 F.Supp. 325 (D.Del.1939) (final injunction) and 23 F.Supp. 667 (D.Del.1938) (preliminary injunction). Craft v. Lathrop, supra, pertains to title to real property where an injunction was granted preventing further prosecution of an action in ejectment between the two parties. General Ry. Signal Co. v. Union Simplex Train Control Co., supra, pertains to multiple patent infringement litigation involving the same patent. In neither of these cases had there been the extensive changes in law subsequent to the first litigation which is presented in

the instant case, and hence they are not persuasive authority in the present matter.

7. Plaintiffs' prayer for injunctive relief is as follows:
"Wherefore, plaintiffs pray:
"a. That this Court issue a preliminary injunction enjoining defendant, his agents, servants, employees and attorneys, from commencing or prosecuting any action or proceeding against these plaintiffs, or any of them in any court, state or federal, which action or proceeding attempts to relitigate the same claims or causes of action which *were involved, or any right, question or fact relating to the subject matter thereof which was or could have been litigated in this Court in Civil Action No. 29671 and Civil Action No. 33296."* (Emphasis added.)

oil companies." (Emphasis added), (204 F.Supp. 554.)

 Two years after Judge Van Dusen's opinion, the Pennsylvania Supreme Court held that the very statute which plaintiffs and Judge Van Dusen relied on,[8] the Pennsylvania Fair Trade Act, 73 P.S. § 8,[9] was, as applied to non-signers, "clearly violative of Art. II, Section 1, of the Pennsylvania Constitution." Olin Matheson Chemical Corp. v. White Cross Stores, Inc., 414 Pa. 95, 98, 199 A.2d 266, 267 (1964). Thus, the Pennsylvania Supreme Court reversed its prior holding in Burche Co. v. General Electric, 382 Pa. 370, 115 A.2d 361 (1955) which had sustained the constitutionality of the statute as applied to non-signers, and which was the existing law when the other lawsuits were decided.

In addition to the Olin Matheson case, supra, on April 20, 1964, the United States Supreme Court decided Simpson v. Union Oil Company, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964), which involved a gasoline company's use of consignment to set retail prices. The Court declared therein that " * * * resale price maintenance through the present, coercive type of 'consignment' agreement is illegal under the antitrust laws * *." (377 U.S. at 24, 84 S.Ct. at 1058). As a matter of economic impact, therefore, the rigidity of prices is similar whether enforced by the Fair Trade non-signer clause or by consignment agreement. While I express no opinion as to whether plaintiffs' plea of res judicata or collateral estoppel would be vulnerable because of the above decisions, at least I think that the matter is sufficiently uncertain that Fiumara should not have to risk a contempt citation to test the issue.

## II.

Secondly, upon "balanc[ing] the conveniences of the parties and possible injuries[10]" plaintiffs have not made the prerequisite showing of "irreparable injury,[11]" or "manifest wrong or injustice,[12]" to warrant the type of equitable relief sought.

Plaintiffs presented no evidence to indicate that the defense of res judicata or collateral estoppel would be more costly than the actual costs involved in the instant matter where they seek an injunction. In fact, the record is totally silent as to costs, expenditures, or itemization of losses which plaintiffs would sustain if an action were filed.

In the instant matter I find that there is no irreparable injury proven, and even if it had been proven[13] I would have grave doubts as to whether injunctive relief would be appropriate in view of the recent changes of law.

## III.

I have carefully reviewed defendant's motion to dismiss plaintiffs' complaint and I have concluded that at this stage defendant's motion to dismiss should be similarly denied.

8. "It is to be noted that the Pennsylvania Supreme Court, as late as 1959, stated that a minimum price could be set for gasoline under this Pennsylvania Fair Trade Act. * * * *" 204 F.Supp. 544, 549 n. 10 (E.D.Pa.1962).

9. Act of June 5, 1935, P.L. 266, § 2, as amended.

10. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 675, 88 L.Ed. 834 (1944).

11. Simms v. Green, 161 F.2d 87, 89 (3rd Cir. 1947).

12. See American Seeding Machine Co. v. Dowagiac Mfg. Co., 241 F. 875 (6th Cir. 1913), cited in Frink Co. v. Erikson, 20 F.2d 707, 712 (1st Cir. 1927).

13. Yakus v. United States, supra.